# Taylor *v.* Fomby.

*Statutory Action of Ejectment.*

116 621
131 386

1. *Establishment of boundaries*; *admissibility of hearsay evidence.*—Hearsay evidence, if pertinent and material to the issue between the parties, should be received to establish ancient boundaries.

2. *Boundaries*; *removal of fence*; *adverse possession.*—Where one of two adjacent land owners extends his fence so as to embrace within his enclosure lands belonging to the other, but in ignorance of the true boundary line between them, and with no intention of claiming such extended area, such possession of the lands so enclosed is not

[Taylor v. Fomby.]

adverse or hostile to the true owner; but if the fence so extended is believed to be the true boundary line, and he claims ownership to the fence, even though the established division is erroneous, such possession will be adverse and hostile to the owner.

3. *Action of ejectment; general affirmative charge.*—In an action of ejectment by one of two adjacent land owners, when issue is what was the true line between them, there is introduced in evidence, to show where the line surveyed by the United States Government ran, two surveys by different surveyors, which were in conflict, and there is other conflict in the evidence as to the location of such line, the general affirmative charge requested by the defendant is properly refused.

4. *Establishment of original line of survey; source from which it can be established.*—In establishing an original line of survey as made by the United States Government, according to the field notes used in such survey, attention must be first given to calls in such notes for natural or artificial monuments, and if these can not be found, recourse can then be had to the courses and distances, with the variations of the needle from the true meridian, as indicated in the original survey on the field notes.

5. *Same; dispute as to boundary*—In this State, all disputes as to boundary of lands are to be governed by the United States survey, and lines of sections and subdivisions thereof are to be located by the original government survey.

6. *Same; same.*—In ascertaining the boundaries of lands, where the lines established by the United States Government survey are obvious they must be followed, though made on an assumed or wrong magnetic variation; and it is only when lost lines and corners are to be renewed that due allowances must be made for the variations of the magnetic needle from the true meridian.

7. *Ejectment; establishment of boundary; when location of line a fact to be determined by the jury.*—Where, in an action of ejectment, the controlling question is the location of the dividing line between the lands of the plaintiff and the defendant, and the evidence tends to show that the line was run by certified copies of the orginal field notes, and by the calls for the natural monuments indicated thereon, and also by courses and distances as indicated on such notes, the true location of the line between the parties is a fact to be determined by the jury from all the evidence in the case; and, therefore, an instruction to the jury that the "magnetic variation of the needle from the true meridian had no bearing or influence in the case," is free from error and is properly given.

APPEAL from the Circuit Court of Randolph.

Tried before the Hon. E. M. OLIVER, Special Judge.

This was a statutory action of ejectment, brought by the appellee against the appellant.

The complaint claimed "that part of section ten, town-

ship twenty, range ten, in Randolph county, Alabama, lying west of a fence built by J. B. Taylor, on or about March 20th, 1896," etc.

The defendant, by plea to the complaint, denied that he was, or ever had been in the possession of any land whatsoever in said section 10, township 20, range 10, in said county, and disclaimed possession.

The parties entered into an agreement for the trial of the cause, in which they admitted; "That the only question of difference and dispute between the parties was as to the true location, as run and established by the surveyors who made the original United States government surveys, of the section line, running from the southwest corner of section 10, township 20, range 10, in Randolph county, north to the Tallapoosa river."

It was further admitted that one Leonidas Jones, as one of the county surveyors of Randolph county, made a survey of said section line, at the request of the defendant, in March, 1896, having for his guidance certified copies of the original field notes of the government survey, of the lands divided by the line in question ; and that O. S. Perryman, as one of the county surveyors of said county, at the request of the plaintiff, did, on the 25th day of May, 1896, make a survey of said line ; that he had a certified copy of said field notes for his guidance in making his survey, and that the line he ran did not coincide with the line formerly run by said surveyor Jones. It was admitted "that both surveyors, in making their respective surveys of said line, began at the true point of location of the section corner, at the southeast corner of section 9, or southwest corner of section 10, township 20, range 10, in Randolph county, Ala., and hence, the only question of dispute was, as to the correctness of the running of said line ;" and it was further agreed that the defendant owned and had title to section 9, west of said true line, wherever it might be, and that plaintiff owned and had title to section 10, east of the true line, wherever it might be.

The copy of the field notes used by each surveyor was introduced in evidence, as were the written surveys made by each. The original government survey purports, by the field notes, to have been run on a magnetic variation of 6 degrees east, Huntsville meridian. Jones, in his survey, states that he found the line "run on a

magnetic variation of 2½ degrees east." Perryman, in his testimony, states that he ran the line north to the bank of the Tallapoosa river, at a magnetic variation of 6 degrees east, the same variation as that indicated on the field notes by which the United States survey was made. The evidence tended to show that Perryman's survey was made by and according to the monuments and landmarks as were indicated on the field notes by which the original survey was made by the government. It also tended to show that Jones, in his survey, did not discover these natural landmarks, and he was guided more by courses and distances.

It was further shown that one Joseph Curry, a county surveyor, ran this line in 1856, without the aid of field notes, but set the compass so as to make the line run to meet the line exactly opposite the same section line at the north bank of the Tallapoosa river, and that the line Curry ran was the same as the one run by Perryman. The line run by Perryman was considerably west of the one run by Jones, and defendant built his fence on the line run by Jones and took possession of the land lying west of the fence.

Plaintiff's witnesses testified, that more than forty years ago, a fence had been built along the Curry line, through the cleared land, (a part of the land between the owners on each side of the line having been cleared and a part being still in the woods), and had been used for a great part of the time since, by the owners of the land on each side of the line as the dividing line between said section; that said line had been so recognized by them, and that plaintiff had been in possession of the land sued for before March, 1896, for about thirty years.

To each of the questions calling for this testimony, the defendant separately objected, and upon the court's overruling each of their objections and allowing the questions to be answered, and the testimony to go to the jury, the defendant separately excepted to each of such rulings. These rulings, respectively, constitute the grounds for the 1st, 2d and 3d assignments of error.

After the court had admitted such testimony, it instructed the jury that they could only look to it, if true, as a circumstance to be considered by them, together with all the other evidence in the cause in determining

[Taylor v. Fomby.]

whether the true line had been run by the United States
surveyors.

Upon the introduction of all the evidence the court in
its oral charge instructed the jury that "the magnetic
variation of the needle from the true meridian had no
bearing or influence in the case." To this part of the
court's oral charge the defendant separately excepted.
The giving of this instruction constituted the basis of
the 4th assignment of error.

The defendant also separately excepted to the court's
refusal to give each of the following charges requested
by him :   (1.) "If the jury believe the evidence, you will
find for the defendant." (2.) "The magnetic variation
since the original Government survey of the line in ques-
tion, has been and is now from an easterly to a westerly
direction, and that if surveyor Perryman run the line
without regard to this variation, then you must find for
the defendant."

There were verdict and judgment for the plaintiff.
The defendant appeals, and assigns as error the several
rulings of the trial court to which exceptions were re-
served.

STELL BLAKE, for appellant.—The evidence allowed
to be introduced by the plaintiff as to the building of the
fence along the line in question, and the possession by
the plaintiff of the land inclosed by such fence, was
hearsay, and, therefore, inadmissible.—1 Greenl. on
Evidence, § 448 ; Payne v. Crawford, 102 Ala. 399. The
court's instruction to the jury that the magnetic varia-
tion of the needle from the true meridian had no bear-
ing or influence in the case was erroneous, since it in-
vaded the province of the jury and ignored the evidence
introduced in the case.—11 Amer. & Eng. Encyc. of
Law, note 2, p. 238 ; Nelson v. Shelby Manfg. Co., 96
Ala. 517.

The United States statutes make the field notes
the primary and best evidence of boundary.—Rev. Stat.
U. S., § 2396. And in surveying by field notes, courses
and distances must be ascertained with reference to the
magnetic meridian.—2 Amer. & Eng. Encyc. of Law,
502, 508 ; Tiedeman on Real Property, §§ 831, 832, 839 ;
Gillespie's Land Surveying, p. 189 ; Bryan v. Beckley,
12 Amer. Dec. 276 ; Home Protec. of N. Ala. v. Whidden,

103 Ala. 204. Therefore the first charge requested by the defendant should have been given.

3. The court takes judicial notice of the magnetic variation of the needle from the true meridian, and also of the surveys of the land of Alabama.—12 Amer. & Eng. Encyc. of Law, 196 ; *Knabe v. Burden,* 88 Ala. 436.

J. W. OLIVER, *contra.*—In this case, where the location of the line was in dispute, evidence for the plaintiff that she had been in possession of the land up to the Curry and Perryman line, was clearly admissible to aid the jury in determining where the true line ran. The court, in its charge limited the effect of the evidence to this ; besides the appellant did not ask any written charge limiting the effect of the evidence.—*Boardman v. Reed,* 6 Peters 341 ; Tiedeman on Real Property, 832 ; *Budd v. Brooke,* 43 Amer. Dec. 321 ; *Heaton v. Hodges,* 30 Amer. Dec. 731.

HARALSON, J.—The 1st, 2d, 3d and 4th assignments of error are without merit. That boundaries may be proved by hearsay, and by the long acquiescence of parties in a designated boundary as being the true one, is not to be questioned. Landmarks very frequently are of perishable materials, which soon decay or are destroyed. It is important, therefore, that hearsay, if pertinent and material to the issues between the parties, should be received to establish ancient boundaries.— *Boardman v. Reed,* 6 Peters (U. S.) 341. It is also well settled, that if one of two adjacent landowners extend his fence so as to embrace within his inclosure lands belonging to his neighbor, in ignorance of the true boundary line between them, and with no intention of claiming such extended area, but intending to claim adversely only to the real and true boundary line, wherever it may be, such possession will not be adverse or hostile to the true owner. But if the fence is believed to be the true line, and the claim of ownership is to the fence, even though the established division is erroneous, a different rule will apply, as has been held ; for, in such case, there is a clear intention to claim to the fence as the true line, and the possession does not originate in an admitted possibility of a mistake.—*Alexander v. Wheeler,* 69 Ala. 340 ; *Bernstein v. Humes,* 75 Ala. 244 ; s. c. 72 Ala. 556.

The evidence admitted tended to show without dispute, that the plaintiff had been in possession of the disputed premises for about thirty years; that a fence had been built for a part of the way, upon a line established by a survey made by Joseph Curry, a county surveyor, in 1856; that the owners of the land in section 9, had recognized the Curry line as the true line; that said line had been recognized by the owners on each side of the line, as the dividing line between each section, up to the time of the Jones survey in March, 1896, a period of about forty years. After a witness had so testified, the court explained to the jury, that they could only look to this testimony, if true, as a circumstance to be considered by them, together with all the other evidence in the cause, as determining where the true line had been run by the United States surveyors. This explanation placed the evidence admitted, certainly, on unassailable grounds.

2. The first charge requested by defendant, was properly refused. The two surveys by Jones and Perryman, both introduced in evidence to show where the line surveyed by the United States government ran, were in conflict, and the evidence in the cause was altogether such as ought to have been submitted to the jury, as was done.

3. As to the second charge, we may appropriately repeat what has been so well said by Mr. Freeman, in his notes to the case of *Heaton v. Hodges,* 14 Me. 66, reported in 30 Am. Dec. 731: "As a result of the general rule already referred to, that where different parts of the description in a deed or patent conflict, those particulars which are most stable and certain, and least liable to be mistaken, are to prevail, it has been the established rule of construction, that a description of boundaries by known and visible natural and artificial monuments or landmarks, is generally to be preferred to a description by courses and distances and other measurements. A principle of law, so well and so long settled, does not require the citation of authorities to support it." As illustrative of the various applications of this rule, numerous authorities are appended.

The learned annotator makes the further statement of the rule, that "courses and distances are the next most certain items of description, after calls for monuments. natural or artificial, to which alone they yield.—*Chad-*

*burne v. Mason*, 48 Me. 389. In the absence of calls for monuments, therefore, or if the monuments called for can not be ·found, the courses and distances control quantity, and all other less definite terms of description.''

In establishing an original line of survey, according to the field notes used in such survey; attention is given, therefore, first to calls for natural or artificial monuments, and if these are not to be found, to courses and distances, with the variation of the needle from the true meridian as indicated for the original survey on the field notes. Perryman ran his line by the natural monuments indicated, and by coincident courses and distances indicated, and established it by the monuments. Curry ran his line without field notes, by setting "the compass [as is stated] so as to make the line run to meet the line exactly opposite the same section line at the north bank of the Tallapoosa river,'' and his line coincided with Perryman's. Jones professed to run his line by calls on field notes, the same as used by Perryman. The general rule is that all disputes as to the boundaries of land are governed by the United States surveys, unless there is some statute of the State to the contrary; and the United States statutes make the field notes and plats of the original surveyor the primary and controlling evidence of boundary.—Tiedeman on Real Property, § 832; 24 Am. & Eng. Encyc. of Law, 1002. In this State, the lines of sections and subdivisions thereof, are to be located by the original government survey.—Code of 1886, § 84, sub-divs. 13, 14, 15, and § 832. In these surveys, north and south lines are to be run, according to the true meridian, (U. S. Stat. § 2395); and it has been held, that where the lines are obvious, they must be followed, though made on an assumed or wrong magnetic variation.—*Bonney v. McLeod*, 38 Miss. 393. And, it is only when lost lines and corners are to be renewed, due allowance must be made for the variation of the magnetic needle from the true meridian.—*Bryan v. Beckley*, 12 Am. Dec. 276; *Budd v. Brooke*, 3 Gill, 198; s. c. 43 Am. Dec. 321. In the latter case it is said: "In changing the course to gratify a call, the line is run accordingly, either to east or to the west, without regard to the fact, whether, from the date of the original survey to the time of the location of the line, and variation of the needle has been to the east or to the west.''

The line in this case was run, as the evidence tends to show, by certified copies of the original field notes, and by the calls for natural monuments indicated thereon. Where that line was, was a fact to be determined by the jury from all the evidence in the case. There was no error, therefore, in the charge by the court, that the magnetic variations of the needle from the true meridian had no bearing or influence on the case. Nor was there any error in refusing charge No. 2, on the same subject, requested by the defendant.

There is no error in the record, and the judgment below is affirmed.

Affirmed.