# Doe *ex dem.* Holt *v.* Adams *et al.*

## *Action of Ejectment.*

1. *Suggestion of adverse possession and improvements; claim of title must be in good faith; color of title not necessary.*— Under the suggestion of adverse possession and valuable improvements, in an action of ejectment, the occupancy must be in good faith under either color or claim of title. If the defendant claims title in good faith, the character of the possession is sufficient, although he may have no color of title.

2. *Plea not guilty in ejectment; effect of.*—By the plea of not guilty in ejectment the defendant conclusively admits that he is in possession of the land sued for, as the same is described in the complaint.

3. *Possession of land; when adverse and when not.*—While it is true that the possession of a coterminous landowner of land beyond the true boundary line is not adverse when he holds under the mistaken belief that he is occupying land within the boundaries described in his deed, and has no intention to claim beyond his true line, yet the circumstances under which he takes and holds possession of land beyond the boundaries described in his deed, may reasonably justify the inference, and even *prima facie* presumption, that his possession of such land is under a *bona fide* claim of right and therefore adverse.

4. *Adverse possession; the privity required to constitute continuous.*—The privity required to constitute continuous adverse possession by tacking the possession of the original entryman to that of another, may be effected by any conveyance, agreement or understanding, written or verbal, which has for its object a transfer of the rights acquired under the original entry. The transfer of the possession alone is sufficient to create the privity for this purpose, and written evidence of the transfer is not necessary when the property is held by the transferee under the claim of the first entryman.

5. *Same; when section 1541 of Code not applicable.*—The act of the legislature, Code § 1541, which requires persons claiming adverse possession of land to give notice thereof by filing in the probate office of the proper county a declaration of his claim, particularly describing the land, has no application

[Doe *ex dem.* Holt v. Adams *et al.*]

to persons who enter upon land and assert adverse posses-
sion thereto *under an honest claim of purchase.*

6. *Use and occupation of land; rule in assessing value of.*—Where
a party enters on the possession of land containing improve-
ments which are afterwards destroyed, and he continues in
possession until sued in ejectment, the rule for ascertaining.
the value of the use and occupation, under the suggestion of
adverse possession and improvements made, is to first ascer-
tain the value of use and occupation up to the destruction of
the improvements, and then to ascertain the value of use
and occupation of the land without the improvements.

7. *Value of land; when to be ascertained under suggestion of
adverse possession and improvements.*—Where a party enters.
on possession of land containing improvements, and is after-
wards sued in ejectment and suggests adverse possession and
improvements, and it appears that the improvements had
been destroyed before suit brought, the value of the land at.
the time of the trial must be assessed, and not the value at
the time defendant entered thereon.

8. *Sufficiency of evidence; when not considered.*—The sufficiency
of evidence for any purpose will not be considered unless
there is an assignment of error under which its sufficiency
for the purpose referred to can be questioned.

9. *Use and occupation of land; when evidence of to be considered.*
Evidence as to the value of use and occupation of land is not
to be considered by the jury for the purpose of ascertaining-
such value during the time the defendant, who suggests ad-
verse possession, held it, until they find the suggestion of ad-
verse possession to be true.

APPEAL from the Circuit Court of Shelby.

Tried before Hon. GEO. E. BREWER.

The facts are stated in the opinion.

The charges refused to the plaintiff and which are re-
ferred to in the opinion are as follows: No. 1. "If the·
jury believe the evidence, you must find the defendant's·
suggestion of adverse possession to be untrue." No. 2.
"If you believe from the evidence that Willoughby, the·
agent of the Railroad Company, told Mr. Stein at the·
time of the sale to him that the kiln was not on the land·
sold him, he cannot claim to be a purchaser in good
faith of the kiln, his suggestion of adverse possession
must fail, and you must find it to be untrue." No. 3.·
"If you find the suggestion of adverse possession to be·
true you must assess the value of use and occupation·

[Doe *ex dem* Holt v. Adams *et al.*]

according to its value when Stein took possession and from that date to the present date."

No. 4. "If you find the suggestion of three years adverse possession to be true, you must assess the value of the land according to its value when Stein took possession."

LACKLAND & WILSON, for appellant, cited *Turnipseed v. Fitzpatrick*, 75 Ala. 297.

A. LATARDY and BROWNE & LEEPER and W. R. OLIVER, *contra*.

BRICKELL, C. J.—This is an action of ejectment by the appellant to recover possession of "the southeast quarter of the northwest quarter of section 9, township 22, range 2 west, situated in Shelby county, Alabama, the same being the subdivision of land upon which is located the lime kiln on the South & North Alabama Railroad formerly operated by N. B. Dare and known as the 'Dare Kiln.'" Defendant disclaimed possession of all the land sued for except a part thereof 200 feet by 300 feet, particularly described, on which is situated the lime kiln etc., and as to this part he pleaded not guilty and the statute of limitations of ten years. Before entering on the trial defendant also suggested upon the record, as authorized by section 1536, Code of 1896, adverse possession for three years next preceding the commencement of the suit, and the erection of permanent improvements. Plaintiff proved title to the land described in the complaint, derived by mesne conveyances from the United States. Defendant offered no evidence of title to the land sued for, but his testimony tends to show that on January 13, 1887, one Stein purchased from the Louisville & Nashville Railroad Co. the east half of the southwest quarter of the same section, adjoining the land sued for on the south; that before he purchased the land the Calera Land Company, the owner of the land sued for, had caused a survey thereof to be made, and immediately after the purchase by Stein the latter had a survey made of the land bought by him from the railroad company, and according to both sur-

veys the lime kiln was on the northeast quarter of the southwest quarter, the land purchased by him; and that while Stein was negotiating for the purchase of the land the agent of the railroad company pointed out the line dividing the northeast quarter of the southwest quarter from the southeast quarter of the northwest quarter, and according to this line the kiln was on the land he bought from the railroad company; that he bought the kiln believing it to be on the land bought from the railroad company, entered into possession thereof at the time of the purchase, and held possession until he sold to defendant Meyer on March 27, 1895. Meyer testified that "he bought the kiln from Stein in 1895; that he entered into and held possession of it under the deed of Stein to him dated March 27, 1895, * * * * and had had actual possession of it through himself and tenants ever since that time." The deed from Stein to Meyer conveyed the northeast quarter of the southwest quarter, the subdivision adjoining that described in the complaint. Six or seven years after Stein went into possession of the land and kiln, which he supposed was on the land when he took possession, the kiln was destroyed by fire, and he erected a new kiln, together with other improvements, on the site of the old one. There was also evidence, which was somewhat in conflict, tending to show the value of the land not disclaimed without any improvement thereon, the value of the improvements when Stein took possession, the value of the improvements erected by Stein, and the value of the use and occupation of the land without any improvements. The jury found in favor of the plaintiff, appellant here, for the land in controversy, and further found that the suggestion of adverse possession was true, that the value of the improvements was $1,700, the value of the land without any improvements $5, and the value of the use and occupation of the land without improvements was $900, and judgment was rendered accordingly, with a provision that "no execution or writ of possession shall issue until one year after the date of this judgment, in accordance with sections 2704 and 2705 of the Code of 1886."

The evidence before the jury, although not without conflict, was sufficient to authorize the court to submit to the jury the determination of the character and duration of the possession by defendant and those under whom he claimed, on the issue made by the suggestion of adverse possession and the erection of valuable improvements. The character of the possession necessary to support this issue does not differ from that of the possession which will put in operation the statute of limitations, except that in the former case the occupancy must be in good faith under either color or claim of title. If the defendant claims title in good faith, the character of the possession is sufficient, although he may have no color of title.—*N. O. & S. R. R. Co. v. Jones,* 68 Ala. 48; *Pickett v. Pope,* 74 Ala. 122. The effect of the plea of disclaimer and not guilty under which the case was tried, was to conclusively admit that the land in controversy was a part of the southeast quarter of the northwest quarter, and therefore was not embraced in the deed from the railroad company to Stein or in that of Stein to Meyer.—*McQueen v. Lampley,* 74 Ala. 408. While it is true that the possession of a coterminous landowner of land beyond the true boundary line is not adverse when he holds under the mistaken belief that he is occupying land within the boundaries described in his deed, and has no intention to claim beyond his true line, yet the circumstances under which he takes and holds possession of land beyond the boundaries described in his deed may reasonably justify the inference, and even the *prima facie* presumption, that his possession of such land is under a *bona fide* claim of right and therefore adverse.—*Hess v. Rudder,* 23 So. Rep. 136. The testimony tending to show that while Stein was negotiating with the agent of the railroad company for the purchase of the east half of the southwest quarter, the latter pointed out to him a line which he said was the north boundary line thereof, and according to this line the lime kiln and other improvements were on this land; and that after the purchase Stein had the land surveyed and the survey placed the kiln on this land, and that he immediately took possession of the kiln, together with the other land purchased,

believing it to be on the land he had bought, and occupied it for six or seven years until it was destroyed by fire, when he erected a new kiln and other improvements on the same site, and continued the actual occupation until he sold the property and transferred the possession to Meyer,—all this testimony was sufficient to justify a reasonable inference that the possession of the land in controversy was under a *bona fide* claim of right and adverse to the owner of the adjoining land, and therefore sufficient to authorize its submission to the jury.   There was evidence, also, sufficient, if believed, to justify the tacking of Meyer's possession to that of Stein so as to make out three years continuous adverse possession next preceding the commencement of the suit.   Meyer went into possession of the kiln and land in controversy under his purchase from Stein, and leased the property to tenants.   The privity required to constitute continuous adverse possession by tacking the possession of the original entryman to that of another may be effected by any conveyance, agreement or understanding, written or verbal, which has for its object a transfer of the rights acquired under the original entry. The transfer of the possession alone is sufficient to create the privity for this purpose, and written evidence of the transfer is not necessary when the property is held by the transferee under the claim of the first entryman.—1 Am. & Eng. Ency. Law (2nd ed.) 844; *McNeely v. Langan,* 22 Ohio 32; *Shuffleton v. Nelson,* 2 Sawy. 545; *Weber v. Anderson,* 73 Ill. 439; *Davock v. Nealon,* 58 N. J. L. 21; *Collins v. Lynch,* 157 Pa. St. 246.   The act of February 11, 1895, (§ 1541, Code of 1896) which requires persons claiming adverse possession of land to give notice thereof by filing in the probate office of the proper county a declaration of his claim, particularly describing the land, has no application to persons who enter upon land and assert adverse possession thereto *under an honest claim of purchase.*   If, therefore, the jury believed from the evidence that Stein entered upon the land in controversy under an honest belief that it was a part of the land purchased by him from the railroad company, and occupied it continuously, under this belief and under a *bona fide* claim of right, up to the

time of his conveyance to Meyer, claiming it as his property without regard to the true boundary line, and that he transferred this possession to Meyer at the time he conveyed to the latter the northeast quarter of the southwest quarter, although the deed did not in fact describe or embrace the land in controversy, and that Meyer, through himself and his tenants, occupied the property continuously up to the commencement of this action under a *bona fide* claim of right and an honest belief that it was a part of the land described in his deed, and that this combined possession continued for three years next preceding the commencement of this suit, then it was their duty to find the suggestion of adverse possession to be true. The evidence was sufficient, as we have seen, to reasonably justify the jury in finding all these facts to be true, and hence charge numbered one, which requested the court to charge the jury that if they believed the evidence they must find the suggestion of adverse possession to be untrue, was properly refused. Charge 2 was properly refused because it ignores other testimony in the case, besides hypothesized in the charge, from which the jury might have reasonably inferred that Stein claimed the land under the honest belief that it was included in his deed. Although he was told at the time of his purchase that the kiln was not on the land purchased by him, yet his possession might well have been under a *bona fide* claim of right and an honest belief that by his deed he acquired the legal title and right to the possession of the land in controversy, if, as the testimony tends to show, the Calera Land Company had a survey of the line made before the purchase, and immediately after the purchase he also had a survey made, and according to both surveys the property was a part of the northeast quarter of the southwest quarter, which he had purchased from the railroad company.

When Stein took possession of the property in controversy there were on the land a lime kiln and other improvements, which he occupied and used until they were destroyed by fire six or seven years later, when he erected new improvements on the same site. There is nothing in the evidence from which it can be inferred that the destruction of the original improvements was

caused by the fault of Stein or Meyer. Charges 3 and 4 are predicated on the theory that the assessment of the value of the use and occupation of the land, as required by the statute, should be based on the value of the land with the original improvements, not only from the date when Stein took possession up to the date of their destruction, but also up to the date of the trial; and that the assessment of the value of the land should be based on its value with such improvements. This theory is, we think, erroneous. The original improvements having been destroyed without Stein's fault, the inquiry as to the value of the use and occupation of the land should cover two separate periods, first, the period from the date of Stein's taking possession to the date of the destruction of the original improvements, during which plaintiff was entitled to the value of the use and occupation of the land with said improvements; and, second, the period from the date of the fire to the date of the trial, during which he was entitled to the value of the use and occupation of the land as it was after the fire without the improvements erected by Stein. And the assessment of the value of the land was to be based on its value at the time of the trial, without any improvements erected by either Stein or Meyer, and not on its value at the time Stein took possession with the improvements then on the land. For this reason these charges were properly refused. It is insisted that there was no evidence offered upon which the jury could base any ascertainment of the value of the use and occupation of the land from the time Stein took possession to the date of the destruction by fire of the original improvements, and hence there were not sufficient data before the jury upon which to base a finding as to the value of the use and occupation of the land during the whole period. There was evidence tending to show that the value of the original improvements at the time they were destroyed was $1,000, and that some years before Stein took possession the value of the use and occupation of the land with such improvements was $40 per month, but that it was less at the time Stein took possession. This evidence was, we think, sufficient to support the verdict, but even if not sufficient, there is no assignment

[Etowah Mining Co. *et al.* v. Wills Valley Mining & Mfg. Co. *et al.*]

[*Ex parte* Etowah Mining Co. *et al.*]

of error under which its sufficiency for the purpose referred to can be questioned. Evidence as to the value of the use and occupation of the land is not to be considered by the jury for this purpose until they find the suggestion of adverse possession to be true, and therefore this evidence was not necessary, as supposed by counsel, to enable the jury to find the suggestion to be true. The judgment describes the land plaintiff is entitled to recover under the verdict as being in the "S. E. ¼ of S. E. ¼" instead of in the S. E. ¼ of N. W. ¼. This is a mere clerical error which will be corrected in this court. We find no other error in the record. Let the judgment be affirmed.

On the application for rehearing, it is made to appear that the judgment below is incorrect or insufficient upon defendant's disclaimer. The judgment of affirmance here will be opened, the judgment below will be corrected in respect of the disclaimer, and as corrected, the judgment of the circuit court will be affirmed.