# Barrett v. Kelly et al.

## Statutory Action of Ejectment.

1. *Admissibility of declaration to show ancient boundary.*—To render admissible in evidence the declaration of persons, other than the owner who was in possession at the time of making the declaration, for the purpose of showing ancient boundary lines, it must be shown that the person who made said declarations was dead, and that he had had an opportunity to know and *prima facie* had the knowledge whereof he speaks, and had been on the land at the time of making the declarations, or was in possession of it when he made the declarations.

2. *Ejectment; admissibility in evidence of testimony of surveyor.* In an action of ejectment, where there is in issue a disputed boundary line, it is entirely competent for a witness who is shown to have been an engineer of many years' experience and to have surveyed the lines around the lands involved in the suit, and to have known said lines for many years, to testify that the lines as shown upon the map, which was introduced in evidence and which was exhibited to him, was correct; and it is not error for the court to refuse to limit the inquiry addressed to such witness as to the correctness of the line shown on the map at the particular point in dispute.

3. *Same; suggestion of adverse possession of three years; admissibility of evidence.*—In an action of ejectment, where there is, by a defendant, a suggestion of three years adverse possession of the land in controversy, it is competent for the defendant to introduce evidence relating to the permanent improvements made by the defendant or those whose estate he has, and having reference to the enhanced value by reason of such improvements.

4. *Ejectment; right of recovery by plaintiff.*—In an action of ejectment, the plaintiff may recover against a mere trespasser, upon proof of prior possession alone.

5. *Same; adverse possession.*—The possession by a co-terminous owner up to the line believed to be the true line, is not presumably adverse, but may become so if the claimant

claims it as a true line and holds the property up to it, claiming it as his own.

6. *Same; same.*—Actual possession of a part of the tract under cover of title extending to the whole, is sufficient possession as to the whole tract, to ripen into title by lapse of time; and this possession may be held by and through a tenant.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This was a suit in ejectment by the appellees against the appellant, to recover a strip of land; and the leading controversy was whether the strip in suit was part of the lot No. 4 of the St. Louis tract, or part of the Duncan tract. The plaintiffs claimed to own lot No. 4 of the St. Louis tract, but did not claim to own any part of the Duncan tract, unless the land in controversy was upon the Duncan tract, in which event they claimed that they have always supposed it to be part of lot No. 4 of the St. Louis tract, and leased it as such from 1885 to 1897 to Turner & Oates, the then owners of the Duncan tract, who held it under such lease, openly, notoriously, and continuously, as the property of plaintiffs for such period, and that such holding ripened title in plaintiffs by adverse possession against the whole world, and certainly as against the tenants and their privies in estate, and that the defendant derived title to the Barton tract under such tenants.

The defendant, on the other hand, claimed to own the Duncan tract, but claimed to own no part of the St. Louis tract, and offered no evidence showing or tending to show any actual adverse possession of the particular property in controversy, except between 1865 and 1871, unless it is a part of the Duncan tract. He showed a title to the Duncan tract of ten years' adverse possession prior to 1885. The plaintiffs claim that even if the property in suit is part of the Duncan tract, and if defendant showed title by adverse possession prior to 1885 to the whole of that tract by actual possession of part under color of title as to the whole, they (the plaintiffs) acquired subsequent adverse possession of the particular land in suit (as shown above), by possession from 1885 to 1897.

Lot No. 4 of the St. Louis tract and the Duncan tract adjoined ,the St. Louis tract being east of the Barton tract. Two surveyors, who were familiar with both tracts and had surveyed them both, testified that the property in suit is part of the St. Louis tract and several non-expert witnesses testified that they knew the recognized line between the two tracts, and that it co-incided with the line laid out by the surveyors. On the other hand, several non-expert witnesses testified that they knew the dividing line, and that the property in controversy is upon the Barton tract.

Neither party offered a complete record title to the property claimed by them. The plaintiffs showed pos-session of part of lot number 4 of the St. Louis tract under color of title to the whole since 1856, and evidence tending to show adverse possession for ten years (viz, from 1885 to 1897) of the particular land in litigation. The defendant, on the other hand, showed pos-session of a part of the Duncan tract under color of title to the whole since 1865, and actual adverse possession of the particular land in suit from 1865 to 1871 . The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

After the introduction of all the evidence in the case, the court at the request of the plaintiff gave to the jury the following written charges, to the giving of each of which the defendant separately excepted: (1.) "The court charges the jury that if they believe from the evidence that according to the true line between the Kelly property and the Duncan tract, the land in contro-versy is part of the Kelly tract, they ought to find for the plaintiff, unless they further find from the evidence that Toomer and those claiming under him had actual exclusive continuous adverse, open and notor-ious possession of the particular lands sued for for ten years or more, and even then if the jury further be-lieve from the evidence that afterwards Turner & Oates became the owners of the mill tract and thereafter recognized the true line mentioned above and claimed only up to that line and continued to so claim to said

line and to recognize the title of plaintiffs' lands, including the land sued for, and held the particular part in controversy as tenants of plaintiffs for said period of ten years, then the jury ought to find a verdict for plaintiffs." (2.) "The court charges the jury that if they believe from the evidence that Daniel Kelly shortly after getting the deed, in evidence from Mr. Moody, built a wharf upon it, and that the line established by the surveyors is the true line between the Kelly tract and the Duncan tract, then they ought to find a verdict for the plaintiffs, unless the evidence reasonably satisfies you that the defendant and those under whom he claims, has had actual, continuous, adverse, open and notorious possession for ten years of the particular property in controversy." (3.) "The court charges the jury that if they believe from the evidence that Daniel Kelly and those claiming under him, have been in the open, notorious, and exclusive possession of the property sued for, claiming the same under color of title, continuously for ten years, then they must find for the plaintiffs, unless they further find from the evidence that the defendants and those under whom they claim have been in the actual, adverse and exclusive possession of the particular property sued for, continuously for ten years since such possession by Daniel W. Kelly and those claiming under him. And if Kelly rented this property to other persons, then their possession would be his possession and not theirs, for the purpose of this inquiry." (8.) "The court charges the jury that if Daniel Kelly was in actual possession of any part of the lands described in the deed to him which has been introduced in evidence claiming the entire tract therein described in said deed, then such possession would extend to every part of said tract which was not in the possession of some other person." (9.) "The court charges the jury that if the plaintiffs have reasonably satisfied them from the evidence that Daniel Kelly was in the actual possession of any part of the land described in the conveyance to him which has been introduced in evidence, either in person or through his tenants, claiming the entire tract

therein described, then his possession would extend to the limits set forth in the deed, including the property sued for, if it was a part of the lot so described, and was not in the actual possession of any other person."

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN E. MITCHELL and PILLANS, HANAW & PILLANS, for appellant, cited *Tillman v. DeLacy,* 80 Ala. 103; *Jones v. Field,* 83 Ala. 445; *Marx v. Lienkauff,* 93 Ala. 464.

GREGORY L. & H. T. SMITH, *contra.*—The court did not err in its rulings upon the evidence.—*Steen v. Sanders,* 116 Ala. 159; *Donehoo v. Johnson,* 120 Ala. 438.

In ejectment, the plaintiff may recover against a mere trespasser upon proof of prior possession alone. *Branch v. Smith,* 114 Ala. 464; *Mickel v. Montgomery,* 111 Ala. 420; *Gist v. Beaumont,* 104 Ala. 350; *Payne v. Crawford,* 102 Ala. 399.

Possession by a co-terminous owner up to a line erroneously believed to be the true line, is not presumably adverse, but may be so if the claimant claims it as the true line and held the property up to it, so claiming. *Holt v. Adams,* 121 Ala. 664; *Hess v. Rudder,* 117 Ala. 525; *Taylor v. Fomby,* 116 Ala. 621.

Possession of a part of a tract under color of title extending to the whole, is sufficient possession of the whole to ripen into title by the lapse of time.—*Smith v. Keyser,* 115 Ala. 455.

TYSON, J.—The two theories upon which the plaintiffs base their right to recover the strip of land in suit are: First, that it is a part of lot 4 of the St. Louis tract or latterly known as the lands of Daniel Kelly; second, if not a part of lot 4, but a part of the Duncan tract, which adjoins, claimed to be owned by the defendant, they claim to have had adverse pos-

session of it for a sufficient length of time to ripen into a title.

The plaintiffs showed possession of part of lot four under color of title to the whole since 1856, and offered evidence tending to show adverse possession for ten years (viz., from 1865 to 1897) of the strip of land in controversy.

The defendant, on the other hand, showed possession of a part of the Duncan tract under color of title to the whole since 1865 and actual possession of the strip of land in suit from 1865 to 1871.

Two surveyors, who were familiar with both tracts and had surveyed them both, testified that the property in dispute is part of lot four, and several nonexpert witnesses testified that they knew the recognized line between the two tracts and that it coincided with the line run by the surveyors. On the other hand, several non-expert witnesses testified that they knew the dividing line and that the strip in controversy is upon the Duncan tract.

A creek formed the southern boundary of the property in controversy and it was without dispute that formerly a gum tree stood at the intersection of the dividing line between the two tracts and this creek. The defendant introduced evidence tending to show that he had, by excavating, found a gum stump and that this was the stump of the tree on the dividing line, and that the strip of land in dispute is situate on his side of the line run from that stump.

In support of plaintiffs' title by possession, they offered in evidence, against defendant's objection, as color of title to lot four, the map and partition proceedings by certain commissioners which described the boundary line between that lot and the Duncan tract. It may be that this evidence was irrelevant at the time it was offered, but when coupled with the proof of possession by Kelly of the lot and the reference made to this map and proceeding in the deed to him by Moody, subsequently introduced, the error, if any, was cured.

One Grove, a witness for plaintiffs, testified to knowing the location of the dividing line between lot four and the Duncan tract and to its location. On cross-

examination it was made to appear, that the witness, some twenty-six years ago, frequently accompanied his father on his visits to the Kelly lot (4) for the purpose of collecting rent for its owner from his tenants. It was during these visits that the witness obtained his knowledge of the line and its location. It was further made to appear that the witness had no knowledge of the line except what his father had told him. Thereupon, the defendant moved the court to exclude "the statements of the witness as to where the line was, because he has no personal knowledge of the facts." The court excluded "the declaration of the witness that he knew where the line was, but allowed to remain before the jury the statement that his father, who was collecting rents for persons claiming the property, told him where the line was," to which an exception was reserved. It is manifest from the motion that the defendant was endeavoring to exclude from the jury the location of the line by the witness based upon declarations made to him by his father; and it is equally clear that the court did not exclude those facts from the jury. In failing or rather in refusing to do so, there was error. It is true, that declarations of persons may be introduced in evidence for the purpose of showing ancient boundaries, but to render such evidence competent and to bring it within the exceptions recognized, to free it from the objection of being hearsay, unless the declarant is the owner and in possession at the time of making the declaration, such person must be shown to be dead and shown to have had opportunities to know and *prima facie* that he had knowledge of that whereof he speaks and to have been on the land at the time of making the declaration or in possession of it when he made the declaration. *To be in evidence,* they (the declarations) must have been made when the declarant was pointing or marking the boundaries or discharging some duties thereto. And we may add, as a further limitation, the declarant must have had no interest to misrepresent, and that the declaration must have been made *ante litem motam.*—*Hunnicutt v. Peyton,* 102 U.

S. 364; *Payne v. Crawford*, 102 Ala. 387; 1 Greenl. Ev. (16th ed.), §§ 131-140a.

There is no merit in the objection to the testimony of Ross. It was entirely competent to show by him, who is shown to have been an engineer for forty years and to have surveyed the lines around the two tracts and to have known these lines for thirty years, that the lines as shown upon the map in evidence exhibited to him were correct.—*Donahoo v. Johnson*, 120 Ala. 438. So too there was no error committed in refusing to limit the inquiry to this witness to the correctness of the line, as shown by the map, at the point of dispute. If the other portion of the line between the two tracts was correct, it was a circumstance which the plaintiffs had the right to have go to the jury, to aid them in determining the correctness of the line in dispute.

There was a suggestion upon the record of three years adverse possession by the defendant of the strip of land in controversy. Exceptions were reserved by defendant relating to the exclusion and admission of evidence bearing upon his right to have the jury assess the value of certain boilers attached to the land by brick masonry with a house over them, the masonry resting on the ground and a certain log carriage which is intersected by the line as claimed by plaintiffs to be the correct line between their respective lands. When the jury find the suggestion to be true, the defendant is entitled to have them assess the value, at the time of the trial, of the permanent improvements made by defendant, or those whose estate he has, and also ascertain by their verdict the value of the lands and of the use and occupation thereof, not including the increased value by reason of such improvements, etc.—Code, §§ 1536, 1537. To constitute structures upon lands, permanent improvements, they must be so attached to the land as to become a part of it; and to entitle a defendant to compensation for them, it must be shown that the value of the land itself was enhanced by them.—*Donahoo v. Johnson*, 113 Ala. 130; 10 Am. & Eng. Ency. Law (1st ed.), 243. If the boilers and carriage were fixtures, and

increased the value of the land, we entertain no doubt of the right of defendant to have their value assessed by the jury. If, on the other hand, they are personalty or if the value of the land is not enhanced by them, then the defendant is not entitled to have their value assessed by the jury. The burden of proving the truth of the suggestion and of showing that the improvements claimed by him are a part of the land, their value, and that the value of the land is enhanced by them, is upon the defendant. These general principles will doubtless serve as a sufficient guide upon another trial, should the question arise again.

What we have said disposes of all the assignments of error insisted upon in argument except the written charges which were given at the request of the plaintiffs. It is not necessary to examine separately each of these charges. The principles of law asserted in them are correct. They may be summarized as follows:

1. In ejectment, the plaintiff may recover against a mere trespasser upon proof of prior possession alone. *Payne v. Crawford*, 102 Ala. 399; *Gist v. Beaumont*, 104 Ala. 350; *Mickel v. Montgomery*, 111 Ala. 420; *Branch v. Smith*, 114 Ala. 464.

2. The possession by a coterminous owner up to a line erroneousy believed to be the true line, is not presumably adverse, but may be so if the claimant claims it as the true line and holds the property up to it, claiming it as his own.—*Holt v. Adams*, 121 Ala. 664; *Hess v. Rudder*, 117 Ala. 526; *Taylor v. Fomby*, 116 Ala. 621.

3. Actual possession of a part of a tract under color of title extending to the whole, is sufficient possession as to the whole to ripen into title by the lapse of time. And this possession may be held by and through a tenant.—*Smith v. Keyser*, 115 Ala. 455.

All of the charges are based upon one or more phases of the evidence.

Reversed and remanded.