[Walker v. Wyman.]

# Walker *v.* Wyman.

*Ejectment.*

(Decided June 18, 1908. 47 South. 1011. Rehearing denied Dec. 24, 1908.)

1. *Adverse Possession; Character; Burden of Proof.*—Where one of two co-terminous owners of land, before the definite establishment of the true line, cultivates across the line to a path located on the other's land, such person has the burden to show that her possession of the land between the true line and the path was hostile to that of the other co-terminous owner.

2. *Same; Color of Title.*—Where land is partitioned between two parties, one party being given one quarter section and the other an adjoining quarter section, a conveyance by one to a third party who in turn conveys to the wife of the party conveying in the first instance, such deeds will not constitute color of title to support adverse possession to a strip of land lying in the adjoining quarter section.

3. *Same; Filing Notice; Extent of Claim.*—Unless adverse possession has been continuous for the statutory period, one holding land adversely without bona fide claim of inheritance or color of title cannot claim adversely without having filed the notice as required by sections 1541-6, Code 1896, after the date when said sections became operative, to-wit, Feb. 11, 1893.

4. *Same; Evidence.*—The evidence in this case stated and examined and held insufficient to show that one co-terminous owner held adversely to the other as to the strip of land beyond her line.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Ejectment by Bessie W. Walker against Elizabeth A. Wyman. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

GUNTER & GUNRER, for appellants. The action taken here as shown by the evidence was a fraud.—*Kirk v. Smith,* 9 Wheat, 288. A possession commencing without the hostile and adversary character required to put the true owner on notice and to call into activity measures to protect his property, especially where each went in under partition proceedings, is presumed to continue

until notice to the contrary.—1 Taylor on Evidence, Sec. 196; 1 Greenleaf, sec. 41. The intention guides the entry and fixes its character.—*Ewing v. Burness,* 11 Pet. 52; *Brown v. Cockerell,* 33 Ala. 38; *Alexander v. Wheeler,* 69 Ala. 340; Warville on Ejectment, Sec. 440; Newwell on Ejectment, Chap. 22. There is no tacking in such a case.—*Graeven v. Devies,* 68 Wis. 317; *Sheppard v. Wilmott,* 47 N. W. 1054; *Childs v. Nelson,* 69 Wis. 125; *Sydnor v. Palmer,* 29 Wis. 252; 24 Wis. 326; 31 Wis. 142; 44 Wis. 111.

RUSHTON & COLEMAN, for appellees. Where a line between two coterminous owners is recognized as such by both for ten years, it becomes the legal boundary line, regardless of the line described in their deeds, and the possession of the property up to said line is, by each, adverse to the other.—*Alexander v. Wheeler,* 69 Ala. 330; *Hoffman v. White,* 90 Ala. 354; *Taylor v. Fomby,* 116 Ala. 621; *Hess v. Rudder,* 117 Ala. 525; *Doe ex dem. Holtv. Adams,* 121 Ala. 664, 668-9; *Barrett v. Kelly,* 131 Ala. 378.

SIMPSON, J.—This action of ejectment was brought by the appellant against the appellee to recover a strip of land west of the southeast quarter of section 3, township 15, range 18, in Montgomery county. James A. Ware, the father of the plaintiff and of defendant's first husband, originally owned both the southeast quarter and the southwest quarter of said section, in one tract. After the death of said father the said land was partitioned, in 1867, between the plaintiff, to whom was allotted the southwest quarter, and James Ware, Jr., the former husband of the defendant, to whom was allotted the southeast quarter; and it was subsequently conveyed to defendant. As both derive title from a common source, there is no controversy about the fact that

the land in question is a part of the southwest quarter, which was allotted to the plaintiff, vesting the legal title in her. The defendant claims this strip of land by adverse possession; the facts, as detailed in the bill of exceptions, being in substance as follows:

For many years, extending back before the partition of the land, the strip of land in question was separated from the remainder of the southwest quarter by a "turn row," "path," or "plantation path across the land." Said James A. Ware Jr., was a minor when the partition was made. His guardian went into possession of the southwest quarter, allotted to him, and plaintiff went into possession of the southwest quarter. The lands were rented out in a body, together, for about 10 years, after which the tenants of each party cultivated the land, respectively, up to said turn row; and no survey was made until 4 years ago, when it was ascertained that the true division line was east of said turn row. But the witness who occupied the southeast quarter as Ware's agent, and then as defendant's from 1875 to 1896, says that he cultivated up to the "hedge row." The husband of plaintiff, in testifying, says that said turn row was "made on account of shortening the distance across the field." He also states that, in the beginning, the tenants of the plaintiff "cultivated east of the path, but the tenants of the defendant encroached." Defendant was married to James A. Ware in 1881, and in 1885 said James A. Ware, Jr., conveyed to Sayre, and Sayre to defendant, describing the land as the southeast quarter of said section 3, and it is admitted that defendant "has been in possession of the land sued for, up to the turn row or path, since that time."

This is all the evidence bearing on the character of the possession, except the testimony of the defendant, who stated that she never heard her husband make any statement with reference to his owning the land, "ex-

cept that he always claimed that land, rented it out;" that she has rented it to different tenants, and it has been in continuous occupancy. On cross-examination, she stated that she did not know where the section line is; that, when she spoke of Mr. Ware's possession, she meant that he was residing on the land that he got in the division of the Ware estate; that she had never heard that there was a dispute as to the location of the line, until she "got notice" of this suit; that she had never heard said Ware say anything showing a purpose to claim any land beyond the true line between Walker and himself; that, when she went into possession, she did not intend to claim any land beyond the true line; that she never did; and that all she meant to say was that she had been cultivating this land up to the turn row. On redirect examination, she stated that she intended to cultivate up to the turn row, "the land always cultivated and claimed by Mr. Ware;" that she considered that the true line of the property; that that was what Mr. Ware considered; that she and he claimed ownership up to the turn row, on the supposition that that was the true line; and that she and Mr. Ware, in taking possession of the land, considered the turn row the western boundary of the land.

The question of adverse possession between cotermin ous proprietors has caused a great deal of litigation, and the courts have found difficulty in clearly defining the rules to govern the same. Possibly a learned author may be correct in taking the position that the question of intent, while just, as an ethical proposition, yet, in practical operation, is too subtile and dangerous (Warreth on Ejectment, § 440), and possibly it would be simpler to hold that possession is sufficient, without any proof as to with what intent it was held; but our own courts have so long held to the contrary doctrine that it

31  R

[Walker v. Wyman.]

has become imbedded in our laws as a rule of property. Our leading case on that question lays down the propositions: First, that where coterminous proprietors agree upon a dividing line, and jointly construct a fence on said line, followed by occupancy up to said fence by both, said possession is adverse, each to the other, and, if continued for the requisite time, ripens into title; second, where a dividing fence is run beyond the true line, whether from inadvertence, ignorance, or convenience, on the part of the owner, and with no intention to claim up to it as the dividing line, his possession is not adverse to the adjoining proprietor, nor can it, when accompanied by acts of ownership, and continued for the length of time prescribed by the statute of limitations, perfect a title, as against such adjoining proprietor. *Browne v. Cockerell,* 33 Ala. 38. In this case the court remarks, in accordance with the general law of adverse possession, that "possession is prima facie evidence of title, and a recovery in ejectment may be had upon it; but, when it is shown that the true title is in another, the intendment in favor of the possession ceases. The law, then, will not presume that the possessor does the wrong of disseising the true owner. It devolves upon him the burden of showing the hostility of his possession to the true owner." Pages 45, 46. To the same effect are *Alexander v. Wheeler,* 69 Ala. 332, 340, *Dothard v. Denson,* 72 Ala. 541, 544, 545, and also the case of *Davis v. Caldwell,* 107 Ala. 526, 18 South. 103, in which two coterminous proprietors had cleared and cultivated, for many years, up to a "hedge or fence row," and the court held the possession not adverse, unless the evidence showed that the hedge row had been established by agreement, or that B, claimed up to it "without regard to the title, or true dividing line." 107 Ala. 531, 18 South. 104.

[Walker v. Wyman.]

In the case of *Hoffman v. White,* 90 Ala. 354, 7 South. 816, while this court held that the line on which the fence had been built had been "agreed on by the then proprietors," yet, pretermitting that, the court say: "The fact would still remain that the owner of lot 32 intended to put the fence on the true line, believed he had done so, and that he and his successors, for more than 10 years, held up to the fence, under a claim of ownership hostile and adverse in its character"—and the court held that, if such possession was open, notorious, actual, and continuous for the statutory period, it would vest title. 90 Ala. 355, 7 South. 816. In the case of *Taylor v. Fomby,* 116 Ala. 621, 22 South. 910, 67 Am. St. Rep. 149, the matter in dispute was as to the true location of the section line, different surveyors having located it differently; and the testimony was that the fence had been on a certain line for more than 40 years, had been used by the owners on each side as the dividing line, "and so recognized by them." 116 Ala. 624, 22 South. 911, 67 Am. St. Rep. 149. It was not shown who built the fence. The court, after stating the rule that, if there was no intention to claim beyond the true boundary, the possession would not be adverse, goes on to remark that "if the fence is believed to be the true line, and the claim of owenrship is to the fence, even though the established division is erroneous, a different rule will apply, * * * for in such case there is a clear intention to claim to the fence as the true line, and the possession does not originate in an admitted possibility of a mistake." 116 Ala. 626, 22 South. 912, 67 Am. St. Rep. 149.

The case of *Hess v. Rudder,* 117 Ala. 525, 23 South. 136, 67 Am. St. Rep. 182, reaffirms the doctrine of *Browne v. Cockerell,* 33 Ala. 38, and there is nothing in it in conflict with said case. In the *Hess Case* it is

stated that the parties "negotiated for land bounded by this line, and not for land bounded by an unknown line described in a deed; that they bought up to this line, paid for land extending to this line, occupied and cultivated up to it, believing it to be the line described in the deed, built a common fence on it, and never questioned its being the true line for a period of fourteen years."—117 Ala. 530, 23 South. 137, 67 Am. St. Rep. 182. The case of *Doe ex dem. Holt v. Adams*, 121 Ala. 664, 25 South. 716, merely holds that "the circumstances under which he takes possession of land beyond the boundaries described in the deed may reasonably justify the inference, and even the prima facie presumption, that his possession of such land is under a bona fide claim of right and therefore adverse." 121 Ala. 668, 25 South. 718. In that case the peculiar circumstances were that when the party was negotiating for the land the particular piece in contraversy was pointed out to him as being a part of the land, and a survey made shortly thereafter placed it as a part of the land bought; that it was a particularly valuable part of the land, and when the improvements were destroyed by fire he erected new ones and other improvements. In the case of *Barrett v. Kelly et al.*, 131 Ala. 378, 30 South. 824, the matter in controversy was whether a certain lot was a part of the St. L. tract or of the D. tract. The decision is taken up mainly in discussing points of evidence. The charges requested related to the general doctrine of adverse possession, and do not call for any discussion of the principles of the case of *Browne v. Cockerell*, 33 Ala. 38. There was no question about a fence line, or any other kind of a line, established by both or either of the parties. The court disposes of the charges in a summary way, by stating general principles, among which it is said that "the possession by a cotermintous owner up to a

line erroneously believed to be the true line is not presumably adverse, but may be so if the claimant claims it as the true line and holds the propehty up to it, claiming it as his own." 131 Ala. 386, 30 South. 827. We do not find, then, that the later cases have overruled or modified the case of *Browne v. Cockerell*, 33 Ala. 38.

In the case now under consideration it does not appear that there is now, or ever has been, any dispute about where the section line runs. It is admitted that, according to the proper location of the section line, the land in controversy belongs to the plaintiff. It does not appear that the supposed dividing line ever was established by both or by either of the parties as the line between the two properties; but, on the contrary, it was not a fence, or any other barrier usually placed as the dividing line of properties, but was merely a "turn row" or "path," which had been made there for other purposes, while the entire land was held as one body, without any intention of dividing it. The title is clearly in the plaintiff, and the burden is on the defendant to show the hostility of her possession to the true owner. At the time when her former husband took possession there were no "peculiar circumstances," but his guardian merely took possession of the southeast quarter, and his tenants merely cultivated up to the turn row. In 1885 her said husband conveyed to her merely the southeast quarter of the section, and no more, which could not transfer to her any possession, or give her color of title to anything outside of said southeast quarter.— *Fisher v. Muecke*, 82 Iowa, 547, 48 N. W. 936, 937; *Graeven v. Dieves*, 68 Wis. 317, 31 N. W. 914; *Sheppard v. Wilmott*, 79 Wis. 15, 47 N. W. 1054; *Childs v. Nelson*, 69 Wis. 125, 33 N. W. 590.

There is not only no evidence to show, either upon the part of the defendant's former husband or of herself. any intention to claim to said line, without regard to

the title or true line, but, on the contrary, the statements of the defendant herself, heretofore detailed, show clearly that neither her husband nor herself ever had any idea of claiming anything except the southeast quarter. As shown by the authorities above cited, the defendant could not claim any color of title to this strip by the deed to her in 1885, and it is equally difficult to see how she could claim that she had a "bona fide claim of purchase" when she entered upon this land; for she does not show that this land was delivered to her by her husband. In fact, there never was any entry except constructively by the deed, and the only fact is that her tenants cultivated up to this line, while the man who occupied under her up to 1886 does not say that he cultivated up to the path or turn row, but up to the hedge row. These being the facts, the defendant cannot claim adverse possession, if at all, after February 11, 1893, not having filed any declaration. Code 1896, §§ 1541, 1546.

It results that the defendant failed to lift the burden which rested on her to show such adverse possession as our decisions demand. The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DENSON and McCLELLAN, JJ., concur.