# Ashford *v.* McKee.

### *Ejectment.*

(Decided February 13, 1913. Rehearing denied June 30, 1913. 62 South. 879.)

1. *Ejectment; Directing; Verdict.*—Where there was conflicting evidence tending to support the theory of both parties as to a contested boundary line, neither party was entitled to have the verdict directed.

2. *Same; Possession; Title.*—Although possession is prima facie evidence of title, and sufficient to support a recovery in ejectment, yet when it is shown that the true title is in another, the intendment in favor of the possession ceases.

3. *Same; Evidence.*—The answer of a witness that he knew nothing about the occupancy of certain lands prior to the making of a survey except that the land was recognized as the land of plaintiff, and that he exercised ownership thereof, was objectionable as involving a conclusion of the witness.

4. *Same; General Reputation.*—Where the character of possession of land is in issue, it cannot be proven by general reputation, nor by the opinion of witnesses as to the actual condition of the property.

5. *Same; Exclusive Possession.*—The question as to whether plaintiff was in exclusive possession of the land down to a specified line was objectionable as calling for a conclusion; although possession is a fact to which a witness may testify, he may not testify that a person is in open and notorious possession.

6. *Same.*—A question whether the predecessor in title of plaintiff was in exclusive control of the land also called for a conclusion.

7. *Same; Opinion.*—In ejectment, a question whether a certain party was in control of the land at a specified time, was proper.

8. *Same.*—Where the action was over a disputed boundary line, and there was considerable testimony concerning an upper and a lower line, defendant contending that the upper or north line, as shown by the maps in the record, was the true line dividing the north

[Ashford v. McKee.]

and south half of the section, and plaintiff contending that the north-west quarter extended to the lower or south line, it was proper for a witness who was not a surveyor, but who had long acquaintance with the land, to testify whether he found surveyor's marks on trees all along the upper line through the section from east to west, as the evidence of ancient surveyor's marks along the line had a bearing on the question whether that was the true line.

9. *Same.*—Where the action was to determine a disputed boundary line between adjacent owners, it was competent to admit in evidence the deeds constituting defendant's chain of title, as well as certain mortgages executed by defendant's predecessors in title, as showing acts of ownership.

10. *Adverse Possession; Elements; Intent.*—Where a party occupies land to a fence because he believes the fence to be a division line, but without intent to claim beyond the fence if it should be beyond his line, his possession is not adverse, because of want of intent to claim land beyond the limits of his paper title.

11. *Same; Boundaries; Agreed Line.*—Where adjoining land owners agree on a dividing line, and each claims up to it as such, with knowledge of the claim by each other owner, the claim becomes hostile and adverse.

12. *Appeal and Error; Harmless Error; Evidence.*—Where the court erred in sustaining objection to a question as to whether a certain person was in control of the land at a specified time, the error was rendered harmless where the court almost immediately permitted the witness to testify that such person was in control of the land, claiming to own it, and that no other person claimed to own the land up to the time of such person's death, which occurred a number of years before.

13. *Same.*—Where the witness without objection proceeded and was permitted to answer the question at length, no harm resulted from sustaining objection to the question.

14. *Same.*—Where a witness subsequently testified that he delivered a deed to plaintiff at a certain place, and that the only possession he delivered to plaintiff was in delivering to him the deed conveying the W. ½ of the N. W. ¼ of the section in which the land was located, any error in sustaining an objection to a question to such witness whether he put plaintiff in possession of the land down to and including a certain line, was rendered harmless.

15. *Same; Review; Record; Matters Included.*—Although the bill of exceptions recites that the motion for new trial was submitted on May 13, 1910, the same being the day to which the April term of the court had been adjourned, the order on the motion for new trial was not reviewable where there was no entry in the record proper showing that the court was lawfully in session on that day. (Section 3238, 3248, Code 1907.)

16. *Trial; Reception of Evidence; Rebuttal.*—Where the plaintiff in his main case introduced considerable evidence as to certain stones which he alleged marked the true line, and defendant offered no evidence as to when or by whom the stones were located, a question in rebuttal to a witness whether he knew when the stones were located on that line, and by whom, was not proper.

17. *Same; Submission of Cause; Remarks of Court; Coercion of Jury.*—The facts relative to the conduct of the court in the absence of plaintiff and his counsel considered and it is held that the court's communication to the jury was not improper, and did not amount to duress or coercion.

18. *New Trial; Motion; Continuance.*—Where a motion for new trial was not acted on at the term at which it was filed, an order of continuance is ordinarily necessary to keep the motion alive until another regular term, but this rule does not apply to adjourned terms.

19. *Courts; Terms; Adjourned Term.*—An adjourned term of the circuit court is to be deemed a part of the regular term, and every step may be taken thereat which might have been taken at the regular term.

APPEAL from Limestone Circuit Court.

Heard before Hon. Thomas W. WERT.

Ejectment by Thomas T. Ashford against Simp McKee. Judgment for defendant and plaintiff appeals. Affirmed.

ALLEN & BELL, and JAMES E. HORTON, for appellant. Where adjoining owners agree on a certain dividing line, one of them going into possession of the lands under the agreement, and remaining in possession up to such line uninterruptedly and exclusively, claiming to own them, for ten years, gets a title, which can be divested only by a conveyance, or by adverse possession by another for the statutory period. *Pittman v. Pittman,* 124 Ala. 306; *Brown v. Cockerell,* 33 Ala. 38; *Hess v. Rudder,* 117 Ala. 528; *Tenn Coal, I. & R. Co. v. Linn,* 123 Ala. 112; *Davis v. Caldwell,* 107 Ala. 529; *Alexander v. Wheeler,* 69 Ala. 332; 1 Am. & Eng. Encyclopedia of Law, (2nd Edition) p. 793. If two coterminous proprietors of land make a parol agreement to employ a surveyor to run the dividing line between them, which agreement is executed and possession held accordingly for the period prescribed by the statute of limitations, or even for a long time short of that period, the agreement is binding and conclusive on the parties

and those claiming under them. *Brown v. Cockerel,* 33 Ala. 38. Adverse possession of land, for the length of time prescribed as a bar by the statute of limitations, "arms the adverse holder with all the powers of offense and defense which an unbroken chain of title confers," and enables him successfully to prosecute or defend an ejectment; and it is not necessary that such possession should be under color of title. *Barclay v. Smith,* 66 Ala. 230; *Ryan v. Kilpatrick,* 66 Ala. 332. Title by adverse possession is sufficient to support ejectment. 10 Am. & Eng. Encyc. Law (2nd Edition) p. 486; *Doe v. Eslava,* 11 Ala. 1028; *Barclay v. Smith,* 66 Ala. 230; *Murray v. Hogle,* 92 Ala. 559, 9 South. 386. A conveyance of land by one against whom the land conveyed was held adversely by claim of title is void. *Dexter v. Nelson,* 6 Ala. 68; *Bernstein v. Humes,* 60 Ala. 602; *Rivers v. Thompson,* 43 Ala. 641. Possession of land may be shown by acts of dominion suitable with the land in controversy. *Woods v. Montevallo Coal & T. Co.,* 84 Ala. 560; *Rivers v. Thompson,* 46 Ala. 335; *Childress v. Calloway,* 76 Ala. 134. Possession of land is a fact to which a witness may testify. *Eagle & Phoenix Mfg. Co. v. Gibson,* 62 Ala. 369; *Steed v. Knowles,* 97 Ala. 578; *Woodstock Iron Co. v. Roberts,* 87 Ala. 442; *Turnley v. Hanna,* 82 Ala. 139; *Elliott v. Stocks,* 67 Ala. 290; *Wright v. State,* 136 Ala. 139; *Driver v. King,* 145 Ala. 585. After the jury have retired, it is error to give them further instruction, in the absence of counsel, the court having made no effort to have them called. *Kuhl v. Long,* 102 Ala. 563; *Fiebelman v. Manchester,* 108 Ala. 203; *Morris v. State,* 146 Ala. 66; Brickwood's Sacket's Instruction to Jury, Sec. 93; *Crabtree v. Hagenbaugh,* 23 Ill. 349, 76 Am. Decis. 694; *Sargeant v. Roberts,* 1 Pick. Mass. 337. 11 Am. Decis. 185; *Havenor v. State,* 125 Wis. 444, 4 Am. & Eng. An.

Cases 1052; *Hopkins v. Bishop,* 91 Mich. 328, 30 Am. St. Repts. 480.

SANDERS & THACH, for appellee. "Without actual possession, there can be no adverse possession, but where there is actual possession of a part under color of title it is co-extensive with the boundaries defined by the color of title." *Anniston v. Edmondson,* 127 Ala. 464. "An intent accompanying the possession and claim of ownership in the property is an essential element of adverse possession." *Stiff v. Cobb,* 126 Ala. 381; *Alexander v. Wheeler,* 69 Ala. 332. "Possession may be adverse when it is such as the land reasonably admits of, and may be adverse without enclosure, cultivation, or residence, but in order for it to ripen into title, the possession must be by acts calculated to put the true owner on notice of the adverse holding so as to raise the presumption that he has acquiesced in the holding." *Bynum v. Hewlitt,* 137 Ala. 336; *Goodson v. Brothers,* 111 Ala. 589; *Lucy v. Tennessee Co.,* 92 Ala. 246; *Eureka Co. v. Norment, et al.,* 104 Ala. 625; *Washington v. Norwood,* 128 Ala. 390. "A mortgage by a defendant in possession, or a deed by a defendant in possession is admissable to show acts of ownership and to show the extent of the possession.' *Stiff v. Cobb,* 126 Ala. 381; *Anniston City Land Co. v. Edmondson,* 127 Ala. 445. "The character of the possession of land by a party is not a question of fact to which a witness may testify, but is a question to be submitted to and determined by the jury from the evidence." *Benge v. Creaghs, Admr.,* 21 Ala. 151; *Driver v. King.* 145 Ala. 587. "The fact that one claiming land adversely did not return the land for taxation is a relevant circumstance tending to rebut his evidence that he claimed to own the land." *Wing v. Roswald,* 74

Ala. 346; *Doe ex dem Anniston City Land Co. v. Ed-mondson,* 37 South. 424. "Occupancy up to a mistaken boundary line with no intention to claim beyond the true boundary line is not adverse beyond the true line. *Davis v. Caldwell,* 107 Ala. 526. "In case of unen-closed, unoccupied, wild timbered land, it is incompe-tent to ask a witness whether he was in possession of the land, the facts should be shown which in law con-stitute possession." *Thompson v. Burhans,* 61 New York Reports, 52. "The United States statutes make the field notes and plats of the original surveyor, the primary and controlling evidence of boundary." Teid. on Real Property, Sec. 832; 24 Am. & English Encyc. of Law, 1002; *Taylor v. Fomby,* 22 South. 910-912. The court committed no error in overruling the motion for a new trial. *DeJarnett v. Coxe,* 29 South. 618-619. "Instructions to the jury are defined as the exposition by the court of those principles of the law which the latter are bound to apply in order to render such a ver-dict as will in state of the facts proved, at the trial to exist, establish the rights of the parties to the suit. It is the direction of the court to the jury with reference to the law or facts of the case." 22 Cyc. p. 1375, and note; 16 Am. & Eng. Encyc. of Law, p. 824, and Notes; 11 Encyc. of Pl. and Pr., p. 56. "A direction to retire with their bailiff; to separate for their meals; to seal up their verdict; to abstain from talking among them-selves or with others; to sign their general verdict, are not instructions within the meaning of the law." *Mc-Alister v. Mount,* 73 Ind. 567; 16 Am. & Eng. Encyc. of Law, p. 824. "The trial judge is vested with large dis-cretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their

consciences." Encyc. of Pl. & Pr., Vol. 11, p. 304, and authorities cited. "The trial judge may advise the jury that this case had been troublesome and had cost much time and trouble to investigate it, and, therefore, there should be a verdict." *Allen v. Woodson,* 50 Ga., p. 63; 11 Encyc. of Pl. & Pr., p. 305.

DOWDELL, C. J.—1. This is an action of ejectment between coterminous proprietors, involving a strip of land containing about 26 acres. Ashford's muniments of title called for land in the northwest quarter of section 36, and McKee's muniments called for land in the southwest quarter, just south of Ashford. Ashford sought to show by his evidence that this 26-acre strip of uninclosed woodland lay north of the line which had been long recognized as the quarter section line by him and his predecessors in title and also by McKee's predecessors, and as being the true line between the two properties, and that he and his predecessors had been in possession down to this line, and had exercised ownership by cutting timber for boards, rails, etc., at various times, covering a period of many years, and that, even if this disputed tract lay south of the real quarter section line, he had title by adverse possession. McKee sought to establish that the disputed tract was on the south side of the true quarter section line, and really formed a part of the southwest quarter, which had been conveyed to him; that it had never formed a part of the northwest quarter, as shown by the government field notes; that the disputed tract was uninclosed woodland which had never had any timber cut off of it until done by the McLain Lumber Company, his grantee of timber rights, at a comparatively recent period. There was evidence tending to support both the theory of the plaintiff and that of the defendant. Under this state of

the evidence, the refusal by the court below of the affirmative charge in favor of the plaintiff was without error. In this connection, in view of the insistence of counsel for appellant that the affirmative charge should have been given, it will be noted that Caldwell, a surveyor, and witness for plaintiff, admitted that: "According to the government survey and field notes, the land in controversy lies in the southwest quarter of section 36, and that Mr. Ashford's deeds call for land in the northwest quarter." To the same effect, another surveyor, Geo. Motz, a witness for plaintiff, testified. The plaintiff himself testified that he had been paying taxes on the northwest quarter, and stated: "I have not intended to claim in section 36 any land for which I have no conveyance." The jury might well have inferred from this evidence that the disputed tract was south of the true quarter section line, and that, although plaintiff might have exercised acts of ownership over it, he did not intend to claim it if it was in fact not within the description of his conveyances. It is true plaintiff added that: "I have always considered that I bought, and have always claimed to the old line and to the true line. I bought my land down to the original line, and it was my intention to pay taxes down to there.'

The rule in this state, early laid down in *Brown v. Cockerell,* 33 Ala. 38, was expressed in that case as follaws: "If a party occupies land up to a certain fence, because he believes it to be the line, but having no intention to claim up to the fence if it should be beyond the line, an indispensable element of adverse possession is wanting. The intent to claim does not exist, and the claim which is set up is upon the condition that the fence is upon the line." See, also, *Humes v. Bernstein,* 72 Ala. 556; *Alexander v. Wheeler,* 69 Ala. 332; *Hess*

*v. Rudder,* 117 Ala. 525, 23 South. 136, 67 Am. St. Rep. 182; *Holt v. Adams,* 121 Ala. 668, 25 South. 716; *Walker v. Wyman,* 157 Ala. 482, 47 South. 1011. All of these cases recognize the doctrine that when parties agree upon a line as a dividing line, and each claims up to it as such, with knowledge of such claim by the other coterminous owner, the claim becomes hostile. But, as was remarked in the case first above cited, although "possession is prima facie evidence of title, and a recovery in ejectment may be had upon it," yet, "when it is shown that the true title is in another, the intendment in favor of the possession ceases. The law, then, will not presume that the possessor does the wrong of disseising the true owner. It devolves upon him the burden of showing the hostility of his possession to the true owner."

One John Morgan, a witness for the defendant, testified that the McLain Lumber Company, to whom McKee sold the right, did the first cutting on the disputed tract; that he saw the negroes cut the board timber testified about, and that it was not on the disputed tract, but north of it. This piece of testimony alone, if believed by the jury, afforded some ground of possible inference that the witnesses for plaintiff might have been mistaken as to the cutting of timber on this strip of land. We might call attention to other parts of the quite voluminous testimony showing a conflict in the evidence on material issues in the case, but suffice it to say that a careful perusal of the record convinces us that the trial court should not be put in error for refusing the affirmative charge. Without intending to intimate, by what has been said in support of the court's ruling, any opinion as to the correctness of their verdict, we think the case was properly submitted to the jury.

[Ashford v. McKee.]

2. The first assignment of error goes to the exclusion by the court on defendant's motion of the answer of the witness Motz to the question: "Do you know anything about the occupancy of this land previous to the time of making the survey?" The answer, which was excluded, was: "Nothing except this is recognized as his (Ashford's) land, and he exercised ownership over it." The answer was not responsive to the question, and was otherwise objectionable as involving a conclusion of the witness. Furthermore, this witness was a surveyor from another county, and there is nothing in the evidence to show any opportunity on his part for knowledge of the previous exercise of ownership, leaving his answer as the bald expression of opinion.

It has been held by this court that where the character of possession is in issue, it cannot be proved by general reputation, nor by the opinion of witnesses as to the actual condition of the property. *Benje v. Creagh's Adm'r*, 21 Ala. 151.

3. The second assignment of error is based on the court's sustaining the objection of the defendant to the question to the witness High, "Was she in the exclusive possession of the land down to the lower line?" This ruling was free from error. As was said in the case of *Driver v. King*, 145 Ala. 595, 40 South. 319: "It is true that possession is a fact to which a witness may testify. *Eagle & Phoenix Co. v. Gibson*, 62 Ala. 369; *Steed v. Knowles*, 97 Ala. 579 [12 South. 75]. But we have never held that a witness may testify that a person was in the open and notorious possession of land. The character of possession was a fact to be determined by the jury from the evidence, and, to aid them in reaching a conclusion as to openness and notoriety of possession, it was competent for witness, who had testified to the fact of possession, to state how the defend-

ants used the land—what acts of ownership they exercised over them—and whether frequent or otherwise. But it is clear that for a witness to testify that a person was in the open and notorious possession would be but the echo of the opinion of the witness, and a usurpation of the functions of the jury (citing *Benje v. Creagh's Adm'r, supra.*") It is plain that this principle would render this question as to "exclusive possession" objectionable.

The sixth assignment is based upon sustaining defendant's objection to a similar question propounded to the plaintiff as to whether he had been in "exclusive possession" of the land since he purchased it from his mother, and the objection was properly sustained.

The fourth assignment of error relates to the sustaining of an objection to a question as to whether plaintiff's predecessor was in "exclusive control" of the land, and for like reasons this question also was improper. Control, like possession, is a statement of collective fact, which is permissible, but when qualified by such terms as "open and notorious," "exclusive," etc., the realm of mere opinion is entered, and the function of the jury usurped. *Woodstock Iron Co. v. Roberts,* 87 Ala. 441, 442, 6 South. 349.

4. The third assignment involves the question to the witness High, "Was she (Mrs. Ashford) in control of that land at that time?" This was a proper question, but the error in sustaining the objection thereto was cured by the court's almost immediately permitting the witness to testify, as shown by the record, "that Mrs. Ashford was in control of this land, claiming to own it; that no one else beside her claimed to own the land; that Mrs. Ashford was in possession of the land up to the time of her death, which occurred quite a number

of years ago." It satisfactorily appears that the plaintiff suffered no injury by this action of the court.

The same thing appears with regard to the question to the witness Johnson (fifth assignment), to which objection was sustained, which reads: "State to the jury whether or not, during the time you have known this land, who had had it in possession during the last 15 or 20 years." While the phraseology of this question is a little involved, its meaning is clear, and it constitutes a legal question. While the court sustained an objection thereto, the witness at once proceeded, and was permitted, to answer the question, at some length, as will appear by reading pages 30 and 31 of the transcript. We will not unduly lengthen this opinion by quoting this testimony. The record speaks for itself. It readily appears therefrom that the appellant was not injured by this ruling of the court.

The seventh assignment of error is without merit, and is not insisted upon in argument.

The eighth assignment of error sets up the refusal of the court to permit plaintiff to ask witness High the question: "State whether or not under this deed you put Mr. Ashford in possession, you and your sons, of the land down to the lower line as shown on the map." If this question be objectionable, all injury to the plaintiff was eliminated by the further testimony of this witness, which (see page 42 of record) was: "Witness High further testified that when he sold Ashford the west half of the northwest quarter of section 36, he made him the deed at Madison Station, and delivered it to him there, and was not on the premises at the time, and had not been since, and that the only possession he delivered to Ashford was in delivering to him the deed conveying the west half of the northwest quarter of said section."

5. Assignment of error 21. After the defendant had closed his case, the plaintiff recalled witness High, and asked him "whether or not he knew when those stones were located on the line and by whom." To this question the defendant objected upon the ground that same was not in rebuttal, which objection was sustained. In making out his case on the direct, the plaintiff had offered a great deal of evidence about these stones on what he claimed to be the true line. He made it a part of his main case. The defendant had not offered any evidence showing when the stones were located on that line nor by whom. Hence the question called for matter which was not strictly in rebuttal. This same witness testified that when he was living on the land between 1869 and 1874 he had a survey made, running the line from the stone on the west to the stone halfway of the center of the section, considering that the true line; that he notified the Blackwells of the survey; that they were not present thereat, but told him that the corners were marked by a stone; and that he would have no trouble in finding them. There was other evidence offered tending to show that these stones had been there for a very long period of time. Willis Tate said he had been knowing the lands for 50 years, and the rocks were there to mark the corners, and that his father, who had died at the age of over 100 years, told him that he carried the chain for the original survey, and that these rocks were on the line of that survey. He also testified to placing two rocks on that line when he was carrying the chain in the survey made by Mr. High 39 or 40 years ago. In view of Mr. High's testimony early in the case that the Blackwells (who at that time owned the southwest quarter) told him he would find those rocks marking the corners, when he was surveying the land some 40 years ago, and that he

[Ashford v. McKee.]

did so find them, and surveyed according thereto, manifestly he had already answered the question, propounded on rebuttal, to the best of his own knowledge. It would require a very strained construction to put the trial court in error for sustaining the objection to this question. While the court might without error have permitted it, yet, not being strictly in rebuttal of any affirmative fact which the defendant had endeavored to prove, and the plaintiff having rested his main case, it was within the discretion of the trial court, enforcing those rules which are designed for the presentation of cases in due order, and bringing them to an end at some reasonable period, to refuse to reopen a part of the plaintiff's main case, by sustaining the objection, as here made, and without error.

6. The record is full of testimony about an upper and lower line, the defendant contending that the north or top line as shown by the maps in the record was the true line dividing the north from the south half of the section, and the plaintiff contending that the northwest quarter extended to the lower line. Thus it became entirely relevant for witness John Morgan, who had testified to a long acquaintance with the property, as to whether or not he found surveyor's marks on trees along the upper line all the way through the section from east to west. If there were ancient surveyor's marks along this line, it had a bearing on the question as to whether or not that was the correct line. There was no error in overruling appellant's objection to the question to witness Morgan set forth in the twentieth assignment of error. The fact that the witness had not qualified as a surveyor, while it might have affected the weight of his evidence, did not render him incompetent to testify that he found surveyor's marks.

7. Assignment of error numbered from 9 to 19, inclusive, based upon the court's allowing to be intro-

duced in evidence the deeds constituting the chain of title under which the defendant claimed to own the land, and certain mortgages executed by defendant's predecessors in title, are not insisted upon in argument by counsel for appellant. The mortgages were evidently introduced as tending to show acts of ownership. *Stiff v. Cobb,* 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38.

The twenty-second assignment is based on the refusal of the affirmative charge, and has already been considered.

8. The only other assignments of error insisted upon in argument are the twenty-third to twenty-seventh inclusive, based upon the overruling by the court of appellant's motion for a new trial. The case was tried in April, 1910, at the regular term of the Limestone circuit court, which, according to the statute (section 3238, Code 1907) in effect at that time, met on the first Monday after the fourth Monday in March, and might continue in session for two weeks. The judgment overruling the motion for a new trial was made on May 13, 1910 (see page 103 of record). The record proper does not show any order for an adjourned term, or special term, signed by the judge and entered on the minutes of the court, as provided by section 3249 of the Code of 1907, for or including the date of May 13, 1910, when the judgment overruling the motion was entered. The bill of exceptions, on page 92 of this record, does recite that the motion was submitted to the court for decision on May 13, 1910, "the same being the day to which the April term of court had been adjourned," but there is nothing in the record proper, nor for that matter in the bill of exceptions, showing that an order was made, signed, and entered on the minutes of the court in such a manner as the law requires. Without

this, there could have been no legal term of the court on the day the judgment on the motion was entered, and it does not therefore appear to this court that the Limestone county circuit court was legally held at that time. Furthermore, the record before us does not show any continuance of this motion to that date. The record shows that the original motion was filed April 13, 1910, and the amendment thereto was filed May 12, 1910. Ordinarily an order of continuance is necessary to keep a motion for a new trial, not acted on at the term when made, alive until another term. *So. Rwy. Co. v. Jones,* 143 Ala. 328, 39 South. 118. But this rule might not apply to an adjourned term. It has been said that "a court held by adjournment is not a new term, but a continuance of the former term." *Com. v. Justices,* 5 Mass. 435; *People v. Sullivan,* 115 N. Y. 185, 21 N. E. 1039. It has further been held that an adjourned term is to be deemed a part of the regular term; and every step may be taken at it, which might have been taken at the regular term. *Smith v. Smith,* 17 Ind. 75. But the record not showing the order for an adjourned term, required by law, it does not appear to this court that the circuit court of Limestone county was legally in session on May 13, 1910, and the judgment rendered on that day upon that motion is not properly before us for review.

9. Even if it were, we would be inclined to hold that the motion was properly overruled. The only matter urged in support of the motion for a new trial and insisted upon in argument here, which has not already been considered above, is certain alleged instructions or communications given by the presiding judge to the jury in the absence of appellant and his counsel. The remarks of the judge to the jury, made in open court, although in the absence of plaintiff and his counsel,

were manifestly not instructions upon any of the issues in the case, nor did the language used amount to coercion.

The proof offered in support of the motion shows that the case was submitted to the jury at 7 p. m. on Wednesday, that it was agreed by both sides that the clerk might receive the verdict, and that if necessary it might be put in proper form. The presiding judge was called to Decatur and left on the 7:52 train, returning to Athens between 12 and 1 o'clock the same night. He went to the courtroom, and finding that the jury was still in their room, had them called out, and asked them if they had agreed on their verdict, and, being advised that they had not, he told them to return to their room and further consider their verdict. Upon leaving the courtroom the judge instructed the bailiff that, if the jury had not agreed on a verdict by 4 a. m. to notify them that they might disperse and return to the courtroom at 9 a. m. On the following morning, after convening court, another case was called in which a struck jury was demanded, and the judge ordered that the jury in the Ashford McKee Case be brought into the courtroom. When they appeared, the court asked them if they had been able to agree upon a verdict, to which they replied that they had not. The court thereupon stated that he did not mean to intimate that they should return a verdict for one side or the other, or that they should return any verdict at all, but that if they could reach a conclusion without any sacrifice of principle or conviction, he would be glad for them to do so; that the case had consumed a great deal of time and expense in its trial, and that if it was possible for them to reach a unanimous conclusion one way or the other, he would be glad, but that he expressly refrained from indicating or intimating what verdict they should

[Ashford v. McKee.]

return, or that they should return any verdict at all in the case, and stated to them that his purpose in calling them before the court at this time was to ascertain whether they were qualified to serve on the next case called for trial. The court had observed counsel on both sides in the courtroom shortly before the jury appeared, but plaintiff and his counsel were not present when the above statement was made to the jury, nor was defendant present. Defendant's counsel was in the room, but had nothing to say, nor did the court consult with counsel about calling the jury into the courtroom. The court made no effort to have counsel for plaintiff brought in so as to be present when the statement was made to the jury above quoted, and said counsel knew nothing about it. About an hour after the jury had again retired, they returned the verdict in favor of the defendant.

We can see nothing here that required the presence of counsel, nor does any attempt to coerce the jury appear. It is the duty of trial judges to expedite the trial of causes when it can be done in a manner entirely consistent with fairness and justice. The sum and substance of what the court said to this jury—in a most tactful way—was but a gentle hint that their services were needed in other cases, and not to waste time unnecessarily, but to reach a unanimous conclusion as soon as they properly could, if they could do so without any sacrifice of principle or conviction. Such remarks were held not to constitute instructions, in the sense that requires counsel to be present when the court charges or instructs the jury. See case of *De Jarnette v. Cox*, 128 Ala. 522, 29 South. 618; also 16 Am. & Eng. Encyc. Law, p. 824, and notes. Nor do we see anything improper or coercive in these remarks. Of course there should be nothing in the intercourse of the court with

the jury having the least appearance of duress or coercion. Any attempt to influence the jury by referring to the length of time which the court proposes to keep them together, or the inconvenience to which they may be subjected in case they should be so pertinacious as to adhere to their individual opinions, and thus disagree, cannot be justified. *Phoenix Ins. Co. v. Moog,* 81 Ala. 343, 1 South. 108; *De Jarnette v. Cox, supra.* On the other hand, as well expressed in 11 Encyc. of Pl. & Pr. p. 304: "The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences. He may advise jurors to lay aside mere pride of judgment, and not to adhere to an opinion regardless of what the other jurors may say, merely through stubbornness, to examine any existing difference in a spirit of fairness and candor, and to reason together and talk over such differences and harmonize them, if possible. So, also, the court may urge as reasons for agreeing on a verdict the time and expense which a new trial would entail. But it is not proper to give an instruction censuring jurors for not agreeing with the majority.'

The case of *Fiebelman v. Manchester,* 108 Ala. 180, 19 South. 540, cited by appellant, is not in conflict with our view of the instant case. There the court gave the jury additional instructions as to the law of the case in the absence of counsel.

No reversible error appearing in the record, the judgment of the lower court will be affirmed.

Affirmed.

ANDERSON, MAYFIELD, and DE GRAFFENRIED, JJ., concur.