267 So.2d 516

**William EADY**

v.

**STATE.**

**4 Div. 138.**

Court of Criminal Appeals of Alabama.

Oct. 10, 1972.

Wade H. Baxley, Dothan, for appellant.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Eady was convicted in the Circuit Court of Houston County of grand larceny and sentenced to a term of four years in the penitentiary. He was charged with car theft and at the time of his arrest was on parole from a conviction of robbery and a sentence that would expire in 1994.

The evidence in this case, though not altogether convincing, was certainly conflicting, and, therefore, made and presented a jury question. The automobile allegedly stolen was a 1964 Buick, the property of Bernice Kiser, and of the value of about $500.00. On the day of the alleged theft, January 21, 1971, appellant got off work before five o'clock. He had a pay check which he carried to Branch's store located across the street from the Tip Top Cafe where Bernice Kiser worked for her brother, who owned the Tip Top. Branch cashed appellant's pay check and went to the State store and bought a fifth of whiskey for appellant. Branch broke the seal and took a good drink before giving the bottle to appellant, who told Branch he was "fixing to go over to my woman's right across the street over here." He went to the Tip Top and "I poured her (Bernice) a cupful and me up a cupful and started to drinking." He further testified that there was no one else in the cafe "but two somebodies and that was me and her." According to appellant's testimony, he had been going with Bernice since he got out of prison in 1967 and had spent the night with her at a motel and rooming house on several occasions. Bernice, for her part, denied that she had ever been with appellant and hardly knew him but had seen him around. She also denied drinking with him and giving him permission to use her car.

The tendencies of the evidence show that Bernice closed the Tip Top Cafe before five o'clock and was going to drive her car to Williams Avenue to visit some friends before coming back to the cafe to serve the evening trade. Her testimony is to the effect that appellant was outside the cafe when she closed the doors, and he asked her for a ride. She asked him where he was going, and he said "up to Lakeview"; that since Lakeview was in the vicinity of Williams Avenue, she gave him a ride. Bernice testified that when she stopped her car on Williams Avenue, she got out and carried the car keys with her into the house where she was to visit, but left the switch on; that appellant got out of her car and started walking down the street. After she had been in the house for ten minutes, her friends called her attention to the fact that someone was driving away in her car. She ran out of the house and recognized appellant driving her car, and she went back in the house and called the police and reported the theft of her automobile, giving the officers the description as being light blue with gray top. Bernice then got a cab and returned to the Tip Top where she called her husband to tell him about the car. The police officers had already located the automobile

and had appellant in custody and had called Bernice to advise her about the car. Bernice and her husband went to the service station on North Range Street and identified the car and appellant was arrested and carried to the station house.

Appellant further claimed that when he got in the car with Bernice, she drove to her home on Stough Street and got out of the car, leaving the keys and the car running and that he told her "I'll be back directly" and she said "Okay, make haste back with the car." He further testified that he drove out to Lakeview and ran the car up on the curb and busted the radiator and had to put water in it twice; that he was putting water in it the second time when the police officer came up.

The record reflects that the officer first observed a 1964 Buick, white top and blue bottom, headed west on Lake Street and going at a high rate of speed; that he started to clock the driver, and when he got to the railroad tracks, the driver applied his brakes and the car went upon the curb and stopped. The driver got out of the car and was looking to see what damage was done to the wheels. He got back in the car and continued on Lake Street. At this time, the officer got a dispatch from the police station relating that a 1964 Buick, described as above noted, had been stolen from Williams Avenue. The driver of the Buick turned into another street and about twenty minutes later, he located the car at Tharp's Service Station on Range Street where the driver was trying to put water in the radiator. The officer asked appellant where he had gotten the car and he said, "I got it from out there." From the record:

"Q. From out where?

"A. He said, 'Out there'. I don't know where he meant.

"Q. Did he say anything about Bernice?

"A. No, sir. I told him—after I told him he was driving a stolen car, and he said he wasn't. I said, 'Well, the lady just reported her car stolen.'

"Q. What else did he say?

"A. He said, 'The broad let me have the car.'

"Q. That the broad let him have the car?

"A. Yes, sir. I asked him the broad's name, but he couldn't tell me.

"Q. How close did you get to him?

"A. Very close.

"Q. Could you smell any intoxicating liquor on his breath?

"A. Yes, sir, he had about · that much in a quart bottle. (indicating)"

■ On appeal appellant is represented by counsel who did not participate in the jury trial. They contend that the evidence is insufficient to support a judgment of conviction, that the State did not meet the burden of proof showing intent to commit the crime and in proving that the victim did not consent to the taking. Counsel also contends that the trial court committed reversible error in giving the jury the "Allen" or "dynamite" charge when the jury reported that it was hopelessly deadlocked. Unfortunately, the record in this case is in such posture that we are unable to respond to these insistences. There were no unfavorable rulings by the trial court. The affirmative charge was not requested, no motion to exclude the State's evidence was made, there was no motion for a new trial, and no exceptions reserved to the oral charge. Therefore, nothing is presented for review. Grant v. State, 46 Ala. App. 232, 239 So.2d 903; Robinson v. State, 46 Ala.App. 684, 248 So.2d 583; Robinson v. State, 44 Ala.App. 206, 205 So.2d 524.

■ In a · prosecution for larceny, where non-consent is essential, there must be direct proof from the person whose non-consent is necessary. Appellant claimed the "broad" let him have the car. The owner denied she consented that Eady could use the car. Conflicting testimony is

for the jury and a verdict thereon is conclusive on appeal. Stephenson v. State, 28 Ala.App. 418, 185 So. 910.

1. If the "Allen" or "dynamite" charge was being presented to this court for the first time, and we were not bound by the decisions of our Supreme Court, I would welcome the opportunity to sound the death knell to this type of charge now and forevermore. One of the most chilling experiences in a trial lawyer's life is to sit helplessly in court and listen to the judge tell the jury:

"* * * 'I charge you additionally at this time that this is an important case. That all trials are expensive. Your failure to agree upon a verdict will necessitate another trial equally as expensive. This court is of the opinion that the case cannot be again tried better or more exhaustively than it has been on either side. It is therefore very desirable that you should reach a verdict. This court does not desire that any juror should surrender his conscientious convictions; on the other hand, each juror should perform his duty conscientiously and honestly according to the law in this case and according to the evidence in the case, and although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions and not a mere acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result you jurors must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of the other members on the jury. You should consider that the case must at some time be decided; that you were selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to more intelligent, more impartial, or more competent to decide it, or that clearer evidence will be produced on one side or the other. In conferring together, you ought to pay proper respect to each other's opinions, with a disposition to be convinced by each other's arguments; and, on the other hand, if much the large number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many equally honest, equally intelligent with himself, who have heard the same evidence with the same attention and with an equal desire to arrive at the truth of the matter and under the sanction of the same oath. On the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated on this jury, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors. With that additional charge, you retire to the jury room.'"

In giving the "dynamite" charge in this case, the court used the word "stubbornness". The word "stubbornness" is not to be found in the charge approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, and the judges of the several Federal circuits have never hesitated to reverse cases when the "Allen" charge was extended by language more coercive in kind and degree.

However, the Supreme Court of Alabama in Ashford v. McKee, 183 Ala. 620, 62 So. 879, quoted approvingly 11 Encyc. of Pl. & Pr. p. 304 as follows:

"'The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their consciences. He may advise jurors to lay aside mere pride of judgment, and not to adhere to an opinion regardless of what the other jurors say, merely through *stubbornness*, to examine any existing difference in a spirit of fairness and candor, and to reason together and talk over such differences and harmonize them, if this be possible. So, also, the court may urge as reasons for agreeing on a verdict the time and expense involved in the trial, and the time and expense which a new trial would entail. But it is not proper to give an instruction censuring jurors for not agreeing with the majority.'" (emphasis added)

The "Allen" or "dynamite" charge is nothing less than a direct appeal from the Bench for a verdict. It is an intrusion by the judge into the exclusive province of the jury as a fact finding body. It should be condemned.

In Starr v. United States, 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841, Chief Justice Fuller said, "It is obvious that under any system of jury trials the influence of

■ The correctness of the trial court's oral charge cannot be raised for the first time on appeal.[1] Segers v. State, 283 Ala.

682, 220 So.2d 848; Cox v. State, 280 Ala. 318, 193 So.2d 759; Lindsay v. State, 41 Ala.App. 85, 125 So.2d 716; Snider v. State, 39 Ala.App. 234, 97 So.2d 163; Cronnon v. State, 46 Ala.App. 632, 247 So.2d 387.

There is no error in the record and the case is due to be affirmed.

Affirmed.

CATES, P. J., and ALMON, TYSON and DeCARLO, JJ., concur.

the trial judge on the jury is necessarily and properly of great weight, and his lightest word or intimation is received with deference, and may prove controlling."

The trial court made use of Ashford v. McKee, supra, in giving this additional charge to the jury, and this court is powerless to do anything about it. Some day, maybe.