288 So.2d 801

**Robert Earl RAY**

**v.**

**STATE.**

**6 Div. 362.**

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

Charles O. Caddis, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Jonathan Prince Gardberg, Sp. Asst. Atty. Gen., Mobile, for the State.

HARRIS, Judge.

Appellant was charged with murder in the first degree involving the death of William James Wells, convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for ninety (90) years.

The deceased was living in an apartment with his common-law wife, Mrs. Audrey Wells, at 1118 16th Street South in Birmingham on May 8, 1971. Around eight o'clock in the morning on that date appellant, his brother Ben Frank Ray, and Charles Edward Weldon came to this apartment. The deceased, his wife, and appellant were in a bedroom. Everyone had been drinking and there were empty whisky bottles, wine bottles, and beer cans on the premises. The deceased had been out of work for two weeks but somehow managed to be amply supplied with alcoholic beverages. His favorite wine was Red Dagger. A blood alcohol test was made by the State Toxicology Department. This blood alcohol test revealed a level of 0.28 percent. When asked to interpret this in terms of the physical condition of one with this percentage of alcohol in the blood, Robert B. Johnson, State Toxicologist for the Birmingham Division, stated as follows:

"This is a high degree of alcohol intoxication. At this level the subjects would be what I call 'sloppy drunk.' If he is able to walk and talk he will stagger markedly, and his speech would be very slowed and slurred. Most times the subject at this level doesn't know where he is, or what he is doing. If you leave him alone he will go to sleep, or some are passed out."

While Mrs. Wells was sitting on the bed with her husband, and while the deceased was talking to appellant, Weldon and Ben Frank Ray entered the bedroom. Weldon had a baseball bat and without a word being said by anyone present, he struck the deceased twice on the head with the bat. The deceased said, "Feller, what are you hitting me for? I didn't do nothing to you. I don't even know you." Mrs. Wells got a wet towel and tried to comfort her husband, who was severely injured and was bleeding profusely. While Mrs. Wells was trying to stop the flow of blood, appellant told Weldon, "Now give her a damn lick across the head", but Weldon didn't respond. Appellant then struck the deceased in the face with his fist and Mr. Wells fell from the bed to the floor.

While the deceased lay prostrate on the floor, one Charles Ray, Jr., another brother of appellant, entered the room with some beer which was then and there consumed by appellant, Ben Frank Ray, Charles Weldon, and Charles Ray, Jr. After drinking the beer, Charles Ray, Jr. left the apartment. While departing, Weldon told him to pick up the baseball bat in the yard and take it with him. Charles Ray told Weldon if he wanted the bat he would have to take it himself.

Mrs. Wells left the bedroom and went to the kitchen, but she was prevented from escaping by Weldon, who blocked the back-door. While in the kitchen, Mrs. Wells heard five or six licks being passed in the bedroom and she asked Weldon to leave and to get the others out of the bedroom and to leave her husband alone. As Weldon and Ben Frank Ray were preparing to leave the apartment, Weldon told Mrs. Wells that if she reported what had occurred he would come back and kill her and if he did not get back he had two brothers who would be back. Ben Frank Ray also told Mrs. Wells that if she reported the incident, he would kill her. She

re-entered the bedroom and saw appellant sitting on the foot of the roll-away bed and she saw appellant kick the deceased in the side and heard him say, "Oh, damn. He ain't dead yet."

Dr. Joseph Beaird, Jr., a practicing pathologist in Birmingham, performed an autopsy on the body of Mr. Wells. He testified that he found multiple contusions, lacerations and abrasions about the head, contusions of the lateral thorax and a tear or laceration of the liver. He found 2,000 to 3,000 cc's of blood in the abdominal cavity. The doctor concluded that the cause of death was bleeding from a ruptured liver, and that the multiple contusions and lacerations were contributing causes. He further testified that there was a discoloration on the right side of the body adjacent to the area of the laceration of the liver, and that the injury to the liver was consistent with someone having kicked or stomped the deceased. The doctor identified a photograph of the body of the deceased taken during autopsy which revealed the mark of a shoe heel just above the lower edge of the rib cage and in the immediate area of the liver.

This appeal is *in forma pauperis*. Appellant was represented at trial by a court-appointed lawyer. Another lawyer represents him on appeal.

The only claim of error is the failure of the trial court to charge the jury on the law of assault and battery in this case.

This homicide resulted in three separate murder-in-the-first-degree indictments. The three defendants were Charles Edward Weldon, appellant, and Ben Frank Ray. Weldon was convicted of murder in the second degree and his punishment was fixed at ten years in the penitentiary. This Court reversed the judgment of conviction in Weldon's case because of the refusal of the trial court to give the following written charge requested by the defendant:

"Gentlemen of the jury, assault and battery is included in the charge against the defendant." Weldon v. State, 50 Ala. App. 477, 280 So.2d 183 certiorari denied 291 Ala. 801, 280 So.2d 186.

We do not have the same situation in this case. *Here there were no written charges requested.* There was no motion to exclude the state's evidence and no motion for a new trial. No exceptions were reserved to the oral charge of the court. The record affirmatively shows that at the conclusion of the oral charge the court said, "What says the defendant?" Defendant responded, "The defense is satisfied, Your Honor."

Where the affirmative charge was not requested, no motion to exclude the state's evidence was made, no motion for a new trial made, and no exceptions reserved to the oral charge, nothing is presented to this court for review. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Segers v. State, 283 Ala. 682, 220 So.2d 848.

We are informed that the jury in the case against Ben Frank Ray rendered a verdict for manslaughter in the first degree and fixed his punishment at one year in the penitentiary.

If the disparity of the sentences meted out to the three men indicted and convicted for the death of William James Wells appears to be harsh—ninety years, ten years (reversed) and one year—in comparison, this is a matter that must be directed to the enlightened discretion of the Pardon and Parole Board.

Mindful of our duty under Title 15, Section 389, Code of Alabama 1940, we have examined the record for any reversible error whether pressed upon our attention or not. We find no reversible error in the record and the judgment of the trial court must be affirmed.

Affirmed.

All the Judges concur.