310 So.2d 495

**John Paul ELDERS**

v.

**STATE.**

**8 Div. 620.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Hardy B. Jackson, Arab, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Elders, a twenty-year-old indigent, was put to trial upon an indictment which, omitting the formal parts, reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment John Paul Elders, whose name to the Grand Jury is otherwise unknown, feloniously took and carried away, in the State

of Indiana, One (1) 1971 Ford Mustang, Mach I, VIN 1F05Mi51960, of the value of $1,500.00, the personal property of Donna Sievers, and brought said car into the County of Marshall, in this State, against the peace and dignity of the State of Alabama."

Upon learning that appellant was an indigent and that he wanted the assistance of counsel, the trial judge appointed a lawyer to represent him at arraignment and trial and also on appeal.

The trial court ascertained that appellant was twenty years of age and following the mandate of Morgan v. State, 291 Ala. 764, 287 So.2d 914, he explained in minute details the Youthful Offender Act, Title 15, Section 266(1)(2)(3)(4)(5)(6), Code of Alabama 1940, Recompiled 1958. He told appellant to consult with his attorney and advise the court if he desired to seek the benefits of that law. After consulting with his attorney, appellant advised the court that he wanted to be tried as an adult and have a jury trial. He went to trial before a jury on the not guilty plea.

The facts in this case are not complicated. On December 16, 1972, Mr. Sanders P. Roberts, a state trooper who had known appellant for several years, met him at the Post Office in Arab, Marshall County, Alabama. The trooper saw appellant get into a 1971 Model Mustang Mach I with an Indiana license plate on it and drive away with two boys in the car. He got the tag number and radioed his base station at Huntsville for a routine check on the vehicle. He received confirmation from the NCIC (National Crime Information Center) that the vehicle in question had been reported stolen in Gary, Indiana. The trooper then overtook the vehicle on U.S. Highway 231, Arab By-Pass and stopped the car. He advised appellant that the car he was driving had been reported to be a stolen car. He called the Arab Police Department for help and appellant and the car were carried to the Police Station. The state trooper received a teletype com-munication from the NCIC giving the serial number of the stolen car and he personally checked the serial number on the dash of the Mustang and the numbers matched.

Appellant was taken into custody and was given the *Miranda* rights and warnings on the 16th day of December, 1972. Appellant signed a waiver of rights form on that day but a signed statement was not taken from him until the next day. Before taking the statement on December 17, 1972, in the presence of State Investigator Wayne Combs of Huntsville, appellant was given the *Miranda* rights again. Appellant made the following statement:

"On Wednesday night, December 13, 1972, I was at the Corral, a hamburger place, where I met a colored man by the name of Mickey. He was driving a '70 Mustang Mach I, color silver, interior green, bearing a '72 Indiana tag. We were joking about trading cars, and he told me that he would trade with me but that I would have to give him some boot. I had a '67 Plymouth, blue, Belevedere II. I gave him two hundred dollars and my car. I did not get any papers on the car, no keys, and the ignition was torn out of the steering column. Mickey gave me a screwdriver to start the car with. I was to make three payments to the Ford dealer on Fifth Avenue. He told me that I could get the finance changed to my name and catch up the three payments—catch up three payments. He did not tell me what name the car was financed in. I left Gary on Thursday morning about two thirty a. m. coming to Arab. I arrived at my mother's house in Arab at one fifty p. m. Thursday afternoon. I saw Rex Ne-Smith and Calvin Ralph on Thursday afternoon. I went to the Pussy Cat on the South Parkway on Thursday night. I saw Jerry King, the bartender. I saw Deborah Oakes, address Route One, Lacy Springs, at the Farley Club on Friday night. On Friday afternoon, Nicky Pritchett and myself went to Rainey's in Ardmore, Tennessee. We left there and

went straight to Arab. I let Nicky out at the Dairy Queen on the by-pass in Arab. On Saturday morning, I came to Guntersville and got Jerry Tedder out of Marshall County Jail. I got a sentence —correction, I'm sorry—I got a bond signed by Jerry's father and some other man. I got the bond on Friday and came down on Saturday morning about eight a. m. and got Jerry out of jail. On Saturday afternoon, I picked up David Bearden at the Wavaho station in Lacy Springs. We then went to Jimmy Van Davises (sic) and picked him up. We went to Arab to see if I had got my money order for one hundred and forty dollars. I received the money order. We left the post office and Trooper Roberts stopped us. Jimmy Van Davis was driving the car."

The NCIC also sent a teletype message stating that the owner of the car is Donna Sievers, 2221 Warrick Street, East Gary, Indiana, which was introduced in evidence as State's Exhibit Number 2, without objection.

Appellant was the only witness in his behalf. On direct examination he testified to substantially the same statement he gave the officers as above quoted.

■ On cross-examination he testified that he could not honestly say what day he traded his car for the 1971 Mustang. He did not know the last name of the man he traded cars with. He only knew him by the name of Mickey; that Mickey told him to go by the McEnary Ford Company in Gary, Indiana, and catch up on two payments but he did not go to the Ford Company; that he intended to go by the company when he returned to Indiana and make the two overdue payments and get the car in his own name.

From the record:

"Q. And you worked all the next day and took out to Alabama about one o'clock at night?

"A. I worked from two till twelve, something like that, it was midnight.

"Q. I see.

"A. The thing was on that switch is when I got in the car and seen the switch was gone, I asked him, I said 'what happened to the switch?' and he said 'ah, somebody tried to rip me off a couple of nights ago, and so I ain't got no switch yet.' He said 'all you've got to do is crank it with this screwdriver,' and he showed me how to start it with a screwdriver. I said 'all right, I'll get it fixed.'

"Q. He gave you the screwdriver, too?

"A. Yes, sir.

"Q. You didn't think anything about it that the switch was gone and no keys or anything?

"A. No, sir.

"Q. Did you ask him for the key?

"A. I said 'where is the key?' and he said 'right there,' and I said 'the screwdriver?' and he said 'yeah, somebody tried to steal my car the other night and you've got to start it with a screwdriver.' I said 'how do you do it?' and he showed me how to do it.

"Q. Didn't you tell Mr. Roberts in you statement that he didn't have any keys for it?

"A. I knew that . . I told him that the ignition was . . . that the . . .

"Q. Well, did anybody have any keys there on this occasion?

"A. No, sir, it was just a screwdriver to start the car with.

"Q. Why did you bring in the subject about the keys? Didn't you just tell me . . .

"A. I asked him . . . I . . . I asked Mickey, I said 'have you got any

keys for this car?' you know, and he said 'no, I ain't got any keys; the ignition was popped and somebody tried to rip me off the other night,' like that, and so he said 'here's a screwdriver,' and he showed me how to start it with a screwdriver.

"Q. Is that the way the car was when it was confiscated here in Alabama?

"A. Yes, sir.

"Q. And you did drive it from Indiana to Alabama?

"A. Yes, sir.

"Q. Did you get a bill of sale for the car?

"A. No, sir.

"Q. Did you get a receipt for the money you paid him?

"A. No, sir."

This record is entirely free of error. It was up to the jury to accept appellant's version as to how he came into possession of the Mustang or to reject his testimony and find that he stole this automobile in Indiana and brought it into this state. The jury took the latter course.

After the verdict of guilty was returned in open court, the trial judge told appellant that he usually imposed a three-year sentence for offenses of this type. He asked appellant how long he had been in jail awaiting trial and he said four months. The judge said he would give him credit for the four months and he sentenced him to imprisonment in the penitentiary for thirty-two (32) months.

■ This is one of the cleanest records to reach this court in a long time. The indictment is in code form and no demurrer was filed thereto. There was no motion to exclude the state's evidence; there was no motion for a new trial; there was no request for the affirmative charge; there were no exceptions reserved to the oral charge to the jury, and there were no adverse rulings of the trial court. There was only one objection made by appellant's counsel during the entire trial and there was no ruling from the bench on that lone objection.

In this state of the record nothing is presented to this court to review. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Grant v. State, 46 Ala.App. 232, 239 So.2d 903; Robinson v. State, 46 Ala.App. 684, 248 So.2d 583; Ray v. State, 52 Ala.App. 18, 288 So.2d 801.

Accordingly the judgment of the court below is affirmed.

Affirmed.

All the Judges concur.