Thurmon Page, Jr., filed an action under the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq. The original defendant, Louisville and Nashville Railroad Company, merged with Seaboard System Railroad, Inc.
Page went to work for the railroad as a track repairman in December of 1978. His job required him to be in close contact with creosoted crossties for extended periods. He manually unloaded crossties from gondola cars and was required to ride in covered railroad trucks containing creosoted crossties.
Page developed a hacking cough, experienced difficulty breathing, and experienced episodes of coughing up blood. He was diagnosed as suffering from occupational bronchitis and chronic airways disease. A doctor testified that Page's permanent condition was caused by exposure to creosote fumes. *Page 327 
A jury returned a verdict for Page for $271,494.81. Judgment was entered accordingly.
Seaboard contends that the trial court erred in admitting into evidence portions of the 1977 NIOSH publication entitledCriteria for Recommended Standard — Occupational Exposure toCoal Tar Products. The Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq., establishes within the Department of Health and Human Services[1] a National Institute for Occupational Safety and Health (NIOSH). Title 29 U.S.C. § 671
states that NIOSH is to perform the functions of the Secretary of Health and Human Services established by 29 U.S.C. § 669
and § 670. Section 669 (a)(3) provides that the Secretary is to conduct research and develop criteria describing safe exposure levels of employees to toxic materials. Section 671 specifically authorizes NIOSH to develop and establish recommended occupational safety and health standards in relation to § 669 and § 670, and to forward them to the Secretary of Labor and the Secretary of Health and Human Services. The Secretary of Labor, pursuant to § 655, promulgates the final standards or rules. Seaboard argues that the Occupational Safety and Health Administration Act,29 U.S.C. § 651 et seq. (OSHA), is not applicable to railroad operations because regulation under OSHA has been displaced by the assumption of jurisdiction in this area by the Federal Railroad Administration (FRA).
Title 29 U.S.C. § 653 (b)(1) provides that "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under Section 2021 of Title 72, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." This section has been interpreted to mean that the exemption "is not activated by mere existence in the FRA of statutory authority to regulate railroad safety," but instead that "some exercise of that authority is necessary to oust OSHA's pervasive regulatory scheme." Southern Pacific Transportation Co. v. Usery,539 F.2d 386, 389 (5th Cir. 1976), cert. denied, 434 U.S. 874,98 S.Ct. 221, 54 L.Ed.2d 154 (1977). Seaboard points to 43 Fed. Reg. 10,583-10,590 (1978) as establishing that occupational safety and health concerns are subject to FRA regulation and not OSHA regulation. While these rules do delineate certain areas where FRA assumes full authority, they make no mention of displacing OSHA regulations regarding safe exposure limits of track repairmen to toxic or harmful fumes. Seaboard cites Velasquezv. Southern Pacific Transportation Co., 734 F.2d 216 (5th Cir. 1984), as being supportive of its contention that OSHA standards in the instant case have been displaced by FRA regulation. In Velasquez the FELA claimant was injured on a walkway beside a track on a railroad bridge in a railway yard. The court held that OSHA standards should not have been admitted at trial because the FRA policy statement at 43 Fed. Reg. 10,583-10,590 (1978) specifically states that "railroad bridges" and "walkways beside the tracks in the yards" are not subject to OSHA control. The instant case is distinguishable from Velasquez because the FRA has assumed no control over the particular area where Page was injured, and has therefore left this area and the breathing safety of employees engaged in track repair to OSHA.
Seaboard also attacks the admissibility of the NIOSH recommended standards because it contends that they are not sufficiently authoritative. Dr. Jack D. Fulmer, a pulmonary specialist, testified that the NIOSH publication was authoritative in the field and further testified concerning his agreement or disagreement with various excerpts from the publication. In Police Firemen's Insurance Association v.Mullins, 260 Ala. 173, 69 So.2d 261 (1953), an associate toxicologist was permitted to identify as authoritative a publication of the Federal Security Agency of the United States Public Health Service entitled Public Health Bulletin No. 290,Carbon Monoxide: *Page 328 Its Hazards and Mechanism of Its Action, and it was admitted into evidence. This Court held that because the toxicologist was shown to be sufficiently qualified to identify the publication as an authority and because it dealt authoriatively with the particular science, reporting what various scientists had concluded on the subject, it was entitled to go before the jury. See also, City of Dothan v. Hardy, 237 Ala. 603,188 So. 264 (1939).
Seaboard next contends that the trial court erred in its charge to the jury concerning the NIOSH-recommended standards. The portion of the charge in question was as follows:
 "Now, the Court further charges the jury that the provisions of the Occupational Safety and Health Act of 1970, commonly referred to as OSHA, do not apply to working conditions of employees with respect to which other Federal agencies exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.
 "Recommended standards promulgated by the Department of Health, Education and Welfare are not binding upon the railroads of the United States but may be given application or may be considered by the jury to the facts of the case as the jury finds them to be in concection with the medical aspects of the case and notice to all industries in the United States as to effects of coal tar products, including creosote, upon workers under certain circumstances as you may find those circumstances to be.
 "It is for the jury to say what weight and what application, what consideration that will be given to these in connection with the facts of the case, of this case, as you find those facts to be based upon all of the evidence in the case."
Seaboard argues that there was fundamental error in this part of the charge because it permitted the jury to apply an inappropriate standard.
The trial court clearly limited the charge in order to prevent the jury from considering the NIOSH-recommended standards for any reason other than in connection with the issue of notice to all industries of the effects of coal tar products and the medical aspects of the case which were testified to. The trial court specifically stated in its charge that the recommended standards are not binding upon the railroads of the United States. These instructions properly limited the jury's application of the NIOSH-recommended standards because they had not been promulgated as final standards pursuant to 29 U.S.C. § 655. We, therefore, find no error in the trial court's charge.
As its final issue Seaboard argues that the trial court erred when it did not grant a mistrial after juror Phillip Dabney communicated to the court his difficulty in agreeing with the other jurors on the amount to be awarded Page.
On April 17, 1984, at approximately 1:45 p.m., this case was submitted to the jury. At 4:30 p.m. that same day the jury sent the following message to the court:
 "To this point the jury has been unable to agree on an amount of proper settlement. Eleven jurors seem to be in agreement. One seems to be inflexible at this point. Please advise as to the proper direction."
In response to this message the trial court responded as follows:
"Please continue your deliberations. Thank you.
Dugan Callaway, Judge"
Within ten minutes the jury sent the court the following message:
 "The jury is unable to come upon an agreement of a proper settlement. Further deliberations will not affect this. We are at a standstill."
At this point the court instructed the jury to report back the next morning.
Eleven of the jurors left, but juror Phillip Dabney remained and indicated that he wished to ask the court a question. The court instructed him to write his question and to give it to the bailiff to relay it to the *Page 329 
court. The message from the juror was as follow:
 "Judge, eleven members of the jury agree on a settlement for the plaintiff. I do not agree on this amount. If I come to this court for the next year daily I will still feel the same way. If we continue tomorrow nothing will be accomplished. How long do we go on with this?
Respectfully,
Phillip Dabney"
To this the court responded:
 "Report back to your jury room at 9:00 a.m. tomorrow morning and resume your deliberations.
Thank you,
Dugan Callaway, Judge"
Dabney remained in the courtroom and sent the court the following message:
 "Judge, apparently we are going to be inconvenienced until we all agree. Therefore, I will agree to whatever figure the other eleven jurors agree on, but I am doing so because I have a life to live outside this courtroom and realize the pressure upon me. Let it be known I do not feel this way in my heart but I will agree out of pressure on everyone's part. I do not intend on coming down here for weeks on end reading the newspapers and taking up valuable court space and taxpayers' money only to feel the same way.
Phillip Dabney"
The morning of April 18, 1984, the court gave the jurors a supplemental charge before they began deliberations. In it the court urged them to deliberate further in an attempt to harmonize their differences and restated its earlier instruction that any verdict the jury reached must be unanimous. The court also further instructed the jury that "[i]t is your duty to agree upon a verdict if you can do so without violating your conscientious convictions based upon the evidence in this case and the law as given you by the Court." After the supplemental charge the jury retired and returned a verdict in favor of Page.
It is well settled law in Alabama that while jurors may not impeach their own verdicts, they may by affidavit disclose facts to sustain their verdicts. Alabama Power Co. v. Brooks,479 So.2d 1169 (Ala. 1985). Fleming v. Knowles, 272 Ala. 271,130 So.2d 326 (1961); Reed v. L. Hammel Dry Goods Co., 215 Ala. 494, 111 So. 237 (1927).
Juror Dabney, by affidavit, made a statement supporting his verdict, of which the following excerpt is the most essential portion:
 "I returned to the jury room Wednesday morning at 9:00 o'clock a.m. and before resuming deliberations further jury instructions were given by the trial court. After the additional instructions were received deliberations resumed and I finally agreed to award Mr. Page a lesser sum of money after the other eleven jurors agreed to increase their award. At the conclusion of the deliberations a unanimous verdict was reached and the Plaintiff was awarded the sum of Two Hundred Seventy One Thousand Four Hundred Ninety Four and 81/100 Dollars ($271,494.81). This is a unanimous verdict that was reached after thoughtful considerations and deliberations. I agreed with the verdict and it was my verdict.
Phillip Dabney"
This affidavit establishes that the trial court's final instructions to the jury had the desired effect of encouraging the jurors to harmonize their differences. Most importantly, it reveals that Dabney was in agreement with the final verdict and that the verdict was unanimous.
It has long been held that there is no error in a supplemental charge restating the juror's duty, asking them to reexamine their position, and encouraging them to reach a unanimous verdict if they can conscientiously do so. Such a charge has become known as an "Allen" charge as a result ofAllen v. United States, 164 U.S. 492, 17 S.Ct. 154,41 L.Ed. 528 (1896). See also, Ashford v. McKee, 183 Ala. 620,62 So. 879 (1913); Rouse v. Wiley, *Page 330 440 So.2d 1023 (Ala. 1983). Accordingly, we find no error in the trial court's supplemental charge or in its refusal to grant a mistrial based upon juror Dabney's remarks.
Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON, BEATTY and HOUSTON, JJ., concur.
[1] Formerly known as the Department of Health, Education and Welfare.