320 So.2d 96

**Willie James DUKE**

v.

**STATE.**

**6 Div. 770.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Edward S. Zanaty, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Quentin Q. Brown, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of the offense denounced by Section 374(20), Title 14, Code of Alabama 1940, which makes it a felony to commit an assault with a deadly instrument upon a peace officer or other law enforcement officer of this state engaged in the active discharge of his lawful duty or duties.

At arraignment, with counsel present, he pleaded not guilty. The jury returned a verdict of guilty as charged in the indictment, and the court sentenced him to a term of ten years in the penitentiary. He was furnished a free transcript and trial

counsel was appointed to represent him on appeal.

Omitting the formal parts, the indictment reads as follows:

"The grand jury of said county charge that, before the finding of this indictment, WILLIE JAMES DUKE alias ALBERT THOMAS whose name is otherwise unknown to the grand jury, did, with a deadly instrument, to-wit: a pistol, feloniously assault James Alfred Hyde, a law enforcement officer, to-wit, a police officer for the City of Birmingham, Jefferson County, Alabama, while the said James Alfred Hyde was engaged in the active discharge of his lawful duty or duties as such police officer for Birmingham, Jefferson County, Alabama, against the peace and dignity of the State of Alabama."

Mrs. Maggie Henderson testified that on May 18, 1973, she, her husband, their six children and her mother lived at 1609 B Eighth Avenue North, Birmingham, Alabama. That between 6:00 and 6:30 p. m., it was good daylight and a hot afternoon. She went out on her front porch to get some fresh air. There was a rooming or boarding house next door at 1605 Eighth Avenue North. She looked next door and saw three women and appellant on the porch. She heard the three women arguing and she saw appellant pull a pistol out of his pocket and fire it one time. She could not tell in what direction the pistol was pointed. The women kept arguing and she saw appellant pull the pistol and fire it the second time. Two of her children were riding bicycles in the street during this shooting and they ran in her house. She went inside her house and called the police and reported what she had observed. She stayed inside her screen door until two policemen came. She identified Officer James A. Hyde as one of the officers who came to her house and asked her where all the shooting had occurred, and she told them next door at 1605 Eighth Avenue North and the officers went to that ad-

dress. She further testified that about ten minutes later she heard another pistol shot at the house next door and saw the officers come out with appellant handcuffed and put him in the police car. In court she pointed to appellant as the man doing the shooting on the porch next door while the women were arguing.

Isaiah Howard testified that he lived at 1608 16th Street North in Birmingham. According to this witness he had a back room in the rooming house where Catherine Westbrook lived with her husband. He stated that he knew appellant and on May 18, 1973, he saw him in Catherine Westbrook's room. He further testified that about thirty minutes before he saw appellant, he heard two gunshots; that appellant stood in the door of the Westbrook room with a pistol in his hand. He stated that Mrs. Westbrook told appellant to come in and put the gun down but he just stood there holding the pistol in his hand. He was shown State's Exhibit 1 and said that was the same pistol that appellant had on the occasion. He said that when an officer came in, the officer said, "Police," and he saw appellant point the pistol toward the officer and fire one time. He further testified that after appellant fired the pistol at the officer, he threw the pistol behind a chair; that appellant was placed under arrest and the officers found the pistol where appellant had thrown it.

Mr. James A. Hyde testified that he was a police officer with the Birmingham Police Department and had been so employed for fourteen years. He stated that he and his partner answered the call to investigate the shooting incident at 1605 Eighth Avenue North; that he entered the front door and walked down the hallway to a room where he heard loud talking. That he took his flashlight and pistol out and stepped to the door of the first room to his left and said, "This is the police." He was standing squarely in the door but was not in the room. After saying, "This is the police," he heard a shot and saw a flash of light com-

ing from the hands of appellant. He further testified that the slug from the pistol struck the jam of the door just inside the door frame. He stated that appellant was standing five to six feet from him when he fired the pistol and the bullet came within three to four inches of his body when it went into the door frame. He said he immediately arrested appellant and put handcuffs on him and then and there read him the *Miranda* rights and warnings. Appellant was then placed in the police car.

He further testified that his partner, Officer Miller, who was an evidence technician, recovered the pistol in his presence. It was a .25 caliber pistol and was behind the chair that Isaiah Howard was sitting in when appellant fired the shot. He stated that there was one unfired cartridge in the clip and one spent shell in the chamber. Officer Hyde identified the pistol and it was received in evidence over appellant's objection that the recovery of the weapon was the result of an illegal search and seizure. The court overruled the objection on the ground that the search was incident to a lawful arrest.

Officer Hyde further stated that he was present when Officer Miller dug the slug out of the door frame but the bullet was so damaged that a ballistics test could not be run on it to determine that it came from the pistol that was admitted in evidence.

Photographs were made of the scene of the shooting. The proper predicate was laid and the photographs were admitted in evidence without objections.

The state then rested and appellant made a motion to exclude the state's evidence on the ground the state had failed to make out a case. The motion was overruled.

Three witnesses, including appellant, testified for the defense. The other two witnesses were Catherine Westbrook and Titus Echols. These last two witnesses testified they heard some shooting but never saw appellant with a gun in his hand.

Mrs. Westbrook testified on cross-examination that she gave a statement to the police after the shooting incident. She stated that she could not remember telling the police that the appellant was the one that shot the pistol nor that she saw a gun in appellant's hand and told him to put the gun down.

Appellant testified and denied shooting a pistol at the police officer. He said he went to this house on the occasion in question because he had a gun in pawn to Willie Williams for $20.00. He admitted that the pistol in evidence was the one he pawned to Willie Williams and that Willie Williams had the gun in his possession while they were in the Westbrook room. That he had been there about five minutes when there was a knock on the door and he asked who it was and they said, "Police." That Mrs. Westbrook asked him to open the door and when he did, a whole bunch of policemen came in and they asked him who was shooting on the porch and he said he did not know. That they arrested him for being drunk and put him in the police car. After a few minutes they got him out of the car and carried him back in the house and as he entered the room, the officers found a gun in the corner with some rags.

On cross-examination he testified that he did not know where Willie Williams was but thought he and his wife had left town. He admitted giving a statement to Sergeant Felts at the city jail but that he did not say in that statement that he owned a .25 automatic pistol and got it pawned on May 18, 1973, and that he was drunk on that occasion; that he had left the gun at a lady's house (1605 Eighth Avenue North); that when he got the gun back he put it in his pocket; that when there was a knock on the door, and it was the police that he pitched the gun into some rags and it went off. He admitted signing the statement but said he did not read it.

The state called Detective H. B. Felts of the Birmingham Police Department and he

testified that he interviewed appellant and some civilian witnesses and took detailed statements from each of them. He stated that he advised appellant of his rights and he signed a waiver of rights form and gave him a written statement.

He testified that Mrs. Westbrook signed a statement saying that appellant had a gun in his hand while standing in her door. That the police identified themselves as they approached the doorway. That she heard a gunshot and found out later that Willie Dukes (appellant) fired it.

He further testified that appellant made the following statements: (1) He owned a .25 automatic pistol which was in pawn until he got it out on May 18, 1973, at 4:30 or 5:00 p. m.; (2) He had a drink and went to the Westbrook room; (3) He got the pistol and put it in his right pocket after calling a cab; (4) He heard a knock on the door and the police identified themselves so he removed the gun from his pocket and threw it in a corner with some rags and it went off; (5) That he was the first person the police grabbed and handcuffed and put in the patrol car and they carried him back in the house and searched for and found the gun.

Appellant admitted a grand larceny conviction on March 31, 1955, and that he got a five-year sentence. On the same date he admitted two grand larceny convictions and got a year and a day on each of those convictions.

It is abundantly clear that appellant and his chief witness were thoroughly impeached.

There was no error in overruling appellant's motion to exclude the state's evidence. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

There was no motion for a new trial; there was no request for the affirmative charge; there were no exceptions reserved to the court's oral charge to the jury, and no

adverse rulings on the admission of evidence. In this state of the record nothing is presented for review since we have disposed of the motion to exclude. *Eady v. State,* 48 Ala.App. 726, 267 So.2d 516.

Conflicting evidence is for the jury, and a verdict rendered thereon is conclusive on appeal. *Eady v. State,* supra; *Pugh v. State,* 51 Ala.App. 164, 283 So.2d 616.

A careful review of the record discloses that the state proved a prima facie case and that the defense consists of testimony denying the evidence of the state. Clearly, such a conflict presents issues within the province of the jury who may give credit to such witnesses as in their discretion merit belief and may disregard the testimony of those witnesses who stand impeached before them. *Haney v. State,* 42 Ala.App. 94, 153 So.2d 652.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.